ATTORNEYS FOR APPELLANT VEOLIA WATER
INDIANAPOLIS, LLC
Matthew W. Melton
Cynthia E. Lasher
Peter A. Schroeder
Indianapolis, Indiana


ATTORNEYS FOR APPELLANTS CITY OF
INDIANAPOLIS, DEPARTMENT OF WATERWORKS AND
CITY OF INDIANAPOLIS
Karl L. Mulvaney
Brian W. Welch
Carl A. Hayes
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Robert A. Smith
Ary Avnet
Noblesville, Indiana



FILED

Feb 06 2014, 10:43 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S04-1301-PL-00008

VEOLIA WATER INDIANAPOLIS, LLC,
CITY OF INDIANAPOLIS, DEPARTMENT OF
WATERWORKS, AND CITY OF INDIANAPOLIS,

*Appellants (Defendants below),*

v.

NATIONAL TRUST INSURANCE COMPANY
AND FCCI INSURANCE COMPANY A/S/O
ULTRA STEAK, INC. D/B/A TEXAS
ROADHOUSE,

*Appellees (Plaintiffs below).*

Appeal from the Marion County Superior Court, No. 49D12-1010-PL-044624
The Honorable Heather A. Welch, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A04-1108-PL-412

**February 6, 2014**

**David, Justice.**

In this case, appellants Veolia Water Indianapolis, LLC ("Veolia"); the City of Indianapolis, Department of Waterworks (the "Department"); and the City of Indianapolis (collectively with the Department, the "City") claim sovereign immunity from liability for damages resulting from a fire that destroyed a Texas Roadhouse restaurant insured by appellees National Trust Insurance Company and FCCI Insurance Company a/s/o Ultra Steak, Inc. d/b/a Texas Roadhouse (the "Insurers"). This case is before us on appeal of the trial court's denial of Veolia's motion for judgment on the pleadings and the City's motion to dismiss. Finding that the trial court was correct in holding that Veolia cannot claim common law sovereign immunity and that the City cannot claim statutory sovereign immunity, we affirm the trial court in these regards but reverse the trial court's holding that the City is not entitled to common law sovereign immunity.

## Facts and Procedural History

In the early hours of January 4, 2010, a fire started in a Texas Roadhouse restaurant located at 1405 Shadeland Avenue, Indianapolis, Indiana. Although the Indianapolis Fire Department responded promptly, its efforts were delayed because several of the nearby fire hydrants were frozen. As a result of the delay, the restaurant was a total loss. The Insurers made payments to the restaurant and stand in the shoes of the insured.

At the time of the fire, Veolia was responsible for operating the City's water utility pursuant to a Management Agreement with the Department. Under the Management Agreement, Veolia maintained the fire hydrants and licensed access to the hydrants' water supply to private companies for commercial use.

2

Alleging that the fire hydrants froze because the private companies to whom Veolia licensed access failed to properly close the hydrants, thus diminishing the hydrants' water supply available to fight the fire and increasing their exposure to the restaurant, the Insurers brought suit against the City and Veolia. The City filed a motion to dismiss pursuant to Indiana Trial Rule 12(B)(6) and claimed sovereign immunity from liability under both the common law and the Indiana Tort Claims Act ("ITCA"). Also claiming common law sovereign immunity from liability, Veolia filed a motion for judgment on the pleadings pursuant to Indiana Trial Rule 12(C).[1]

Denying both motions in part, the trial court found that (1) the City is not entitled to common law sovereign immunity or statutory sovereign immunity under the ITCA regarding the adequacy of the water supply; (2) Veolia is not entitled to common law sovereign immunity regarding the adequacy of the water supply; and (3) the Insurers are third-party beneficiaries to the Management Agreement between the City and Veolia.[2] The trial court certified its orders for interlocutory appeal, and the City and Veolia subsequently appealed.

After accepting jurisdiction, the Court of Appeals reversed the trial court and held that (1) the City and Veolia are entitled to common law sovereign immunity[3] on claims they failed to provide an adequate amount of water to fight the fire; and (2) the Insurers are not third-party beneficiaries to the Management Agreement. Veolia Water Indianapolis, LLC v. Nat'l Trust

---

[1] Veolia does not contend that it is entitled to statutory immunity under the ITCA. See Harrison v. Veolia Water Indianapolis, LLC, 929 N.E.2d 247, 252 (Ind. Ct. App. 2010) (Veolia not governmental entity under ITCA), trans. denied.

[2] The trial court found that both entities are entitled to common law immunity from liability against unauthorized use of the fire hydrants. The Insurers did not appeal this part of the trial court's order.

[3] Citing the relative "wealth" of case law available to determine whether the City was entitled to common law sovereign immunity, the Court of Appeals declined to address whether the City was entitled to sovereign immunity under the ITCA. Veolia Water Indianapolis, LLC v. Nat'l Trust Ins. Co., 973 N.E.2d 3, 12 (Ind. Ct. App. 2012).

Ins. Co., 973 N.E.2d 3, 21–22 (Ind. Ct. App. 2012). The Insurers sought transfer, which we granted, thereby vacating the opinion below. Ind. Appellate Rule 58(A).

The Insurers contend that the City and Veolia are not entitled to common law sovereign immunity. Further, the Insurers claim to be third-party beneficiaries to the Management Agreement between the City and Veolia. Our resolution of the immunity claim is dispositive and we thus decline to address the issue of the Insurers' third-party beneficiary status.

**Standard of Review**

This Court "review[s] de novo the trial court's grant or denial of a motion based on Indiana Trial Rule 12(B)(6)." Caesars Riverboat Casino, LLC v. Kephart, 934 N.E.2d 1120, 1122 (Ind. 2010). "A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish any set of circumstances under which a plaintiff would be entitled to relief." Trail v. Boys and Girls Clubs of Northwest Indiana, 845 N.E.2d 130, 134 (Ind. 2006). When evaluating the trial court's grant or denial of a Rule 12(B)(6) motion, this Court "accept[s] as true the facts alleged in the complaint," and "should not only consider the pleadings in the light most favorable to the plaintiff, but also draw every reasonable inference in favor of the [non-moving] party." Id. (internal citations omitted). We affirm the trial court's grant of the motion "only when it is apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances." Id. at 135 (internal citation omitted).

Similarly, we review de novo a trial court's ruling on an Indiana Trial Rule 12(C) motion. Murray v. City of Lawrenceburg, 925 N.E.2d 728, 731 (Ind. 2010). In our de novo review, we accept as true the material facts alleged in the complaint and base our ruling solely on the pleadings. Id. (internal citation omitted). "A Rule 12(C) motion for judgment on the pleadings

4

is to be granted only where it is clear from the face of the complaint that under no circumstances could relief be granted." Id. (internal citation omitted).

## Discussion

The Insurers contend that neither the City, a governmental unit, nor Veolia, a private company, is entitled to common law sovereign immunity on claims regarding the adequacy of the hydrants' water supply. Because these entities are different in nature, we will take each in turn.

## I. The City is Not Entitled to Statutory Sovereign Immunity on Claims Regarding the Adequacy of the Water Supply

Before we reach the question of whether the City can successfully assert common law sovereign immunity, we must examine whether the City is entitled to statutory immunity under the ITCA.[4] "In general, it is only after a determination is made that a governmental defendant is not immune under the ITCA that a court undertakes the analysis of whether a common law duty exists under the circumstances." Benton v. City of Oakland City, 721 N.E.2d 224, 232 (Ind. 1999). This is in recognition of "the principle that it is the legislature, and not the courts, that is in the best position to determine the nature and extent to which governmental units in Indiana should be insulated from tort liability." Id.

Enacted after this Court abrogated the common law sovereign immunity of governmental units from tort liability, the ITCA governs tort claims against governmental entities and public employees. Harrison v. Veolia Water Indianapolis, LLC, 929 N.E.2d 247, 251 (Ind. Ct. App. 2010) ("In response to Campbell [259 Ind. 55, 284 N.E.2d 733 (1972)], the General Assembly enacted [the] ITCA in 1974."), trans. denied; Gary Cmty. School Corp. v. Boyd, 890 N.E.2d 794,

---

[4] Ind. Code Chapter 34-13-3 (2008).

799 (Ind. Ct. App. 2008), trans. denied. "Pursuant to the ITCA, 'governmental entities can be subject to liability for tortious conduct unless the conduct is within an immunity granted by Section 3 of [the] ITCA.'" Id. (internal citation omitted). The party seeking immunity bears the burden of establishing that its conduct comes within the Act. Id. at 800.

Appealing the trial court's finding that it is not entitled to statutory immunity, the City contends that its provision of water for fire protection services is immune under Ind. Code § 34-13-3-3(7) (2008), which provides immunity for the "performance of a discretionary function." In Peavler v. Bd. of Comm'rs of Monroe Cnty., we adopted the planning/operational test for determining whether an act is discretionary:

> [u]nder the planning/operational dichotomy, the type of discretion which may be immunized from tort liability is generally that attributable to the essence of governing. Planning activities include acts or omissions in the exercise of a legislative, judicial, executive or planning function which involves *formulation of basic policy decisions characterized by official judgment or discretion in weighing alternatives and choosing public policy*. Government decisions about policy formation which involve *assessment of competing priorities and a weighing of budgetary considerations or the allocation of scarce resources* are also planning activities.

528 N.E.2d 40, 45 (Ind. 1988) (internal citations omitted) (emphasis added). When applying this test, we "distinguish between decisions involving the formulation of basic policy, entitled to immunity, and decisions regarding only the execution or implementation of that policy, not entitled to immunity." Boyd, 890 N.E.2d at 800 (internal citation omitted). "The critical inquiry is not merely whether judgment was exercised but whether the nature of the judgment called for policy considerations." Peavler, 528 N.E.2d at 45 (internal citation omitted).

In support of its contention that the provision of water for fire protection services is a discretionary function under Ind. Code § 34-13-3-3(7), the City relies on Lamb v. City of

6

Bloomington, 741 N.E.2d 436 (Ind. Ct. App. 2001).  In Lamb, a fire at a Bloomington apartment complex resulted in one fatality and extensive property damage.  Id. at 438.  Claiming negligence and intentional wrongdoing, residents filed a complaint against the city, mayor, fire chief, and fire department.  Id.  The defendants filed a motion to dismiss, which the trial court granted.  Id. On appeal, the Court of Appeals affirmed the trial court's order of dismissal and found that Ind. Code § 34-13-3-3(6)[5] barred the residents' claims of (1) obstruction of firefighters' ability to act; (2) negligent instruction and/or training of firefighters; (3) negligent maintenance of fire protection equipment; (4) intentional failure to maintain fire protection equipment; and (5) negligent performance of duties as fire chief.   Id. at 441–42.  All were deemed, at least in part, discretionary functions.  Id.

According to the City,

> [w]hether the alleged reason the City failed to provide [an adequate] supply of water was that it delegated operations to Veolia or failed to supervise Veolia's performance under the Management Agreement, those decisions involved the weighing of competing priorities and the allocation of scarce government resources.  Such decisions clearly are discretionary, because they fall into the planning function of government.

(City's Br. at 19.)  To the City, Lamb stands for the proposition that a city's decision not to maintain fire protection equipment involves the formation of policy and is thus necessarily immune from liability under Ind. Code § 34-13-3-3(7).

To the Insurers, however, "[t]his case is clearly distinguishable from Lamb.  In this case there was no 'assessment of competing priorities, weighing of budgetary considerations, or allocation of scarce resources.'"  (Insurers' Resp. to City at 13 (quoting Lamb, 741 N.E.2d at 440–41).)  Moreover, the Insurers argue that

---

[5] At the time, discretionary functions were listed under Ind. Code § 34-13-3-3(6).

7

> [t]his is not a policy decision as in Lamb, where the City may decide they cannot, in tough economic times, maintain the waterworks infrastructure, which is necessary to the core government function of fire protection. Here, *the City did not consciously make a decision to disregard the third-party vendor use of the hydrants due to lack of funds or any other reason.* To the contrary, the City actually contracted for a high standard of care regarding its infrastructure from Veolia, as evidenced by the terms of the Management Agreement. . . . Thus, *the City simply failed to require Veolia to follow the terms of the Management Agreement* or pre-determined policy. The City's negligence relates only to the failed execution or implementation of the pre-determined policy; therefore, the City has failed to show that it is entitled to immunity under [Ind. Code § 34-13-3-3(7)].

(Insurers' Resp. to City at 13 (emphasis added).)

For the reasons they set forth above, we agree with the Insurers. The Court of Appeals correctly noted that "[a]lthough Lamb was decided after Peavler, it does not mention the planning/operational test, but summarily labels certain actions as 'discretionary,' referencing the ITCA." Veolia, 973 N.E.2d at 12. Nevertheless, Lamb is applicable and serves to distinguish the circumstances before us. Here, the City made no deliberate policy decision to fail to require Veolia to follow the terms of the Management Agreement by properly maintaining the hydrants' water supply. Under the Peavler planning/operational test, the City conducted no planning activity involving "formulation of basic policy decisions characterized by official judgment or discretion in weighing alternatives and choosing public policy." Peavler, 528 N.E.2d at 45. Nor did the City make a conscious decision "about policy formation which involve[d] assessment of competing priorities and a weighing of budgetary considerations or the allocation of scarce resources." Id.

Had the City gone through the Peavler planning/operational test and formulated a policy decision excusing Veolia from following the terms of the Management Agreement, the outcome

8

may have been different.  But as it stands, the City cannot establish that it is entitled to statutory immunity for a discretionary function under Ind. Code § 34-13-3-3(7).


**II.     The City is Entitled to Common Law Sovereign Immunity on Claims Regarding the Adequacy of the Water Supply**


As the Court of Appeals recognized, this Court abrogated the common law sovereign immunity of governmental units from tort liability in a series of decisions culminating with Campbell v. State, 259 Ind. 55, 284 N.E.2d 733 (1972).[6]  After Campbell, governmental units are liable for their torts except:

> (1) where a city or state *fails to provide adequate police protection* to prevent crime . . . (2) where a state official makes an appointment of an individual whose incompetent performance gives rise to a suit alleging negligence on the part of the state official for making such an appointment; and (3) where judicial decision-making is challenged.

Benton, 721 N.E.2d at 227 (emphasis added).

In Gates v. Town of Chandler, Water Dept., the Court of Appeals determined that "adequate fire protection is so closely akin to adequate police protection that fire protection should be treated as an exception to governmental tort liability under Campbell" because both services are essential for public safety.  725 N.E.2d 117, 119 (Ind. Ct. App. 2000), trans. denied. Consequently, the Gates court held that governmental units are immune under the common law from liability for damages caused by the "failure to provide suitable equipment or an adequate supply of water with which to fight the fire, i.e., insufficient water pressure . . . or improperly functioning hydrants."  Id.

---

[6] Again, the ITCA was enacted in response to Campbell.  Harrison, 929 N.E.2d at 251.

9

We believe this reasoning to be correct. The government's provision of both adequate fire and police protection is an essential service; thus, we recognize a governmental unit's failure to provide adequate fire protection as an exception to governmental tort liability under Campbell. Accordingly, the City is entitled to common law sovereign immunity on the Insurers' claim that it failed to provide an adequate supply of water from which to fight the fire.

### III.     Veolia is Not Entitled to Common Law Sovereign Immunity on Claims Regarding the Adequacy of the Water Supply

In Ayres v. Indian Heights Volunteer Fire Dept., Inc., we observed that

> [w]hen private individuals or groups are endowed by the state with powers or functions governmental in nature, they become agencies or instrumentalities of the state and are subject to the laws and statutes affecting governmental agencies and corporations. Firefighting is a service that is uniquely governmental. The need to control, prevent, and fight fires for the common good of the community has been universally accepted as a governmental function and duty in this State.

493 N.E2d 1229, 1235 (Ind. 1986) (internal citation omitted). Concluding that a volunteer fire department was an instrumentality of the township that employed it, this Court held that the department was immune from suit under the ITCA. Id. at 1237.

The reasoning in Ayres was central to the resolution of Metal Working Lubricants Co. v. Indianapolis Water Co., 746 N.E.2d 352 (Ind. Ct. App. 2001). In Metal Working Lubricants, the Court of Appeals held that Indianapolis Water Company ("IWC"), the private company operating Indianapolis' water utility under contract with the City, was immune from liability relating to its role in fire protection services. 746 N.E.2d at 359. The court reasoned that "if a private company did not provide the water services, then the government would, and pursuant to

Gates, the government would unquestionably be immune under the same circumstances." Id. at 359.

Relying heavily on Metal Working Lubricants, Veolia contends that the case stands for the proposition that "the narrow function of providing water and equipment for fire protection services entitled IWC specifically, *and any private company providing water for firefighting purposes generally*, to common law immunity." (Veolia's Br. at 20 (emphasis added).) The Court of Appeals, recognizing that it is bound by Supreme Court precedent, found Veolia entitled to common law sovereign immunity for its role in providing fire protection services and accordingly reversed the trial court's ruling. Veolia, 973 N.E.2d at 18. However, in doing so the Court of Appeals correctly pointed to the increasing prevalence and complexity of public-private contracts and respectfully suggested we review common law immunity under the circumstances of this case. Id. We accept their invitation.

Our review begins with Metal Working Lubricants. In holding that IWC was an "instrumentality of the government," the Court of Appeals acknowledged that although "IWC may technically be a 'private' company . . . it enjoys very few attributes of a truly private company. It operates by the authority and at the will of the City." Metal Working Lubricants, 746 N.E.2d at 357. Unlike IWC, Veolia is a wholly private entity bound to the City only by contract. More specifically, Veolia is part of a global organization that manages water services for municipal and industrial clients on five continents and serves approximately six hundred communities in North America alone.[7] Thus, we distinguish this case from the circumstances of Metal Working Lubricants and respond to the increasingly common practice of private, for-profit

---

[7] VEOLIA WATER, http://www.veoliawater.com/about/locations/united-states.htm (last visited Feb. 6, 2014).

11

companies contracting with a governmental unit to provide services—such as managing public water utilities—historically undertaken by the governmental unit.[8]

Arguing that the time has come to treat for-profit companies differently than governmental units in a common law sovereign immunity analysis, the Insurers advance several compelling reasons for distinguishing precedent and subjecting Veolia to liability for negligence. Most influential is their argument that granting common law sovereign immunity to a private company—with a fundamental goal of maximizing profits—invites negligence. As the Court of Appeals observes, "[i]nsulating Veolia from liability for its alleged failure to monitor or maintain in this case may actually create a disincentive to maintain hydrants." Veolia, 973 N.E.2d at 17.

Insulating private companies from liability for negligence was neither the intent behind nor the purpose of establishing common law sovereign immunity for governmental units; rather, one key purpose for granting governmental units sovereign immunity was to protect the public treasury.[9] This purpose is substantially diminished when a private company performs the government service. Moreover, the Insurers argue that it is not clear that Veolia would face staggering liability without immunity, as Veolia is required by contract with the City to carry comprehensive insurance.

In response, the City and Veolia claim that entitlement to common law sovereign immunity for fire protection services does not impact Veolia's incentive to maintain the fire hydrants because Veolia is (1) still liable if the hydrants malfunction and cause a loss related to public consumption; and (2) subject to oversight by the Indiana Utilities Regulatory Commission. Additionally, the City and Veolia argue that abrogating a private company's

---

[8] Ellen Dannin, *Red Tape or Accountability: Privatization, Public-ization, and Public Values*, 15 CORNELL J.L. & PUB. POL'Y 111, 112 (2005).

[9] Harrison, 929 N.E.2d at 253 (quoting Jack M. Sabatino, *Privatization and Punitives: Should Government Contractors Share the Sovereign's Immunities from Exemplary Damages?*, 58 OHIO ST. L.J. 175, 199 (1997)).

common law sovereign immunity for fire protection services will cause an increase in costs to the company managing a public water utility; as a result, these costs will be passed along to customers as increased rates.

Despite the arguments that the City and Veolia advance, we are persuaded by the Insurers' claim that the profit motive of Veolia—a for-profit, private company operating a public water utility under contract with a governmental unit—precludes extension of the common law sovereign immunity to which the City is entitled. Therefore, Veolia is not entitled to common law sovereign immunity on the Insurers' claims that it failed to provide an adequate supply of water from which to fight the fire. The case against Veolia may proceed; although the Insurers' case may not be successful on its merits, or even reach the merits, their case survives Veolia's Rule 12 motion.

Careful to distinguish wholly private companies like Veolia from governmental instrumentalities like IWC, we stress that our holding does not significantly depart from the precedent of Metal Working Lubricants. Crucial is the nature of the link between the private company and the governmental unit.

Our holding is in line with a trend in the federal circuits and at least one state to deny sovereign immunity to private entities who are for-profit companies with the ability to make economic decisions and insure themselves against claims of negligence.[10] For example, in

_____

[10] At issue in the federal cases was *state* sovereign immunity in the context of the Eleventh Amendment. Del Campo v. Kennedy, 517 F.3d 1070 (9th Cir. 2008) (private company contracting with district attorney for services related to California bad check diversion program not arm of state entitled to state sovereign immunity); United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702 (10th Cir. 2006) (lab owned by state university not arm of state for purposes of False Claims Act); Takle v. Univ. of Wisconsin Hosp. and Clinics Auth., 402 F.3d 768 (7th Cir. 2005) (private hospital formerly owned by state not state entity entitled to sovereign immunity); United States ex rel. Barron v. Deloitte & Touche, LLP, 381 F.3d 438 (5th Cir. 2004) (Medicaid fiscal intermediary not arm of state entitled to sovereign

13

<u>Barnum v. Rural Fire Protection Co.</u>, the Arizona Court of Appeals found that because Rural Fire Protection Company, which contracted to provide private fire protection with municipal, industrial, commercial, and residential customers, was a private, for-profit corporation, it was not entitled to sovereign immunity on a claim that it negligently failed to supply a sufficient quantity of water to fight a fire. 537 P.2d 618, 620–21 (Ariz. Ct. App. 1975).

Moreover, in <u>United States ex rel. Barron v. Deloitte & Touche, LLP</u>, the Fifth Circuit concluded that National Heritage Insurance Company ("NHIC"), a Medicaid fiscal intermediary, was not an arm of the State of Texas and thus not entitled to sovereign immunity because (1) Texas statutes and case law characterized NHIC as a private company; (2) NHIC was not funded by Texas; (3) NHIC was an autonomous entity; (4) NHIC did not act for the special advantage of local inhabitants; (5) NHIC had the ability to sue and be sued in its own name; and (6) NHIC had the right to hold and use property. 381 F.3d 438, 440–42 (5th Cir. 2004). Although other factors might be relevant to our determination, we find the six-factor test utilized by Fifth Circuit to be helpful in our analysis of whether sovereign immunity should be extended to non-governmental entities such as Veolia.

Under the Fifth Circuit's test, Indiana law characterizes Veolia as a private company because Veolia is organized as a limited liability company. Second, Veolia is not funded by the City, as the two entities are bound by contract. Third, although Veolia is a wholly owned subsidiary, it acts independently of the City and thus is an autonomous entity under the Fifth Circuit's test. Fourth, Veolia does not act for the special advantage of local inhabitants because

---

immunity); <u>Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and Caribbean Cardiovascular Center Corp.</u>, 322 F.3d 56 (1st Cir. 2003) (hospital, a public corporation, not arm of state entitled to sovereign immunity); <u>Brotherton v. Cleveland</u>, 173 F.3d 552 (6th Cir. 1999) (nonprofit corporation eye bank association not entitled to sovereign immunity); <u>Barnum v. Rural Fire Protection Co.</u>, 537 P.2d 618 (Ariz. Ct. App. 1975) (private, for-profit fire protection company did not have immunity status of governmental unit in negligence determination).

it acts for the benefit of its shareholders. Fifth, as evidenced from this suit, Veolia has the ability to sue and be sued in its own name. Sixth and finally, Veolia, as a limited liability company, has the right to hold and use property. For these reasons, Veolia would not be entitled to common law sovereign immunity under the Fifth Circuit's test. However, in so concluding that Veolia cannot successfully claim common law sovereign immunity under these factors, we again emphasize that we find the Fifth Circuit's test helpful but not controlling.

Critical here, as in United States ex rel. Barron, is factor three of the Fifth Circuit's test: that Veolia is an autonomous entity. When evaluating this factor, the court in United States ex rel. Barron determined that "[a]s a private corporation, NHIC has the independent authority to make internal decisions about compensation and the authority to contract for needed services." 381 F.3d at 441. Similarly, Veolia has the independent authority to make internal decisions, such as insuring itself against claims of negligence. This independent authority helps to distinguish Veolia from IWC, which "operate[d] by the authority and at the will of the City." Metal Working Lubricants, 746 N.E.2d at 357.

Although we are not confining our analysis of whether a non-governmental entity such as Veolia is entitled to common law sovereign immunity to the four corners of the Fifth Circuit's test, the six factors could provide guidance to our trial courts if confronted with the circumstances herein; i.e., motions for dismissal and judgment on the pleadings filed by non-governmental entities asserting common law sovereign immunity. Additionally, should trial courts evaluate a common law sovereign immunity claim under the Fifth Circuit's test, the weight to be attributed to each factor would necessarily depend on the circumstances before the court. As noted by the court in Barnum,

> [w]hat will bring into existence a duty to the individual will of course depend on the facts of each case: Simply stated, there are situations where a government, or agency thereof, can by its conduct, narrow an obligation owing to the general public into a

15

> special duty to an individual, for the breach of which it is responsive in damages.

537 P.2d at 621 (internal citation omitted).

As Judge Posner stated in Takle v. Univ. of Wisconsin Hosp. and Clinics Auth., privatization of a governmental service is not "a farce in which the privatized entity enjoys the benefits both of not being the state and so being freed from the regulations that constrain state agencies, and of being the state and so being immune from suit." 402 F.3d 768, 770–71 (7th Cir. 2005). Because Veolia is a private entity that contracted with the City to provide a governmental service, it is not entitled to common law sovereign immunity on claims regarding the adequacy of the hydrants' water supply.

We emphasize that our holding today does not in any way usurp the discretion and authority of the legislature. Since common law sovereign immunity is judge-made in nature, judges are responsible for its incremental development. "In the absence of a statutory directive or controlling case law, our decision rests heavily on the sort of policy considerations that have always been a part of the development of common law." Mendenhall v. Skinner and Broadbent Co., Inc., 728 N.E.2d 140, 143 (Ind. 2000). Among other factors, our consideration of Veolia's profit motive and status as an autonomous entity has led us to conclude that Veolia is not entitled to common law sovereign immunity from liability for damages resulting from the hydrants' inadequate water supply.

## Conclusion

We hold that a private, for-profit company under the circumstances of this case is not entitled to common law sovereign immunity from liability for damages resulting from a fire that destroyed a Texas Roadhouse restaurant. Accordingly, we affirm the trial court's rulings that Veolia is not entitled to common law sovereign immunity and that the City is not entitled to

16

statutory sovereign immunity from liability for damages resulting from an inadequate water supply in the hydrants near the restaurant. Only the City is entitled to common law sovereign immunity; thus, we reverse the trial court's ruling to the contrary.

Dickson, C.J., Rucker, Massa, and Rush, J.J., concur.

17