

# IN THE
# Court of Appeals of Indiana

Krista Dorsett,

*Appellant-Plaintiff*

v.

Indiana American Water Company, Inc.,

*Appellee-Defendant*



FILED

Dec 04 2024, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

December 4, 2024

Court of Appeals Case No.
24A-CT-338

Appeal from the Clark Superior Court

The Honorable Kyle P. Williams, Judge

Trial Court Cause No.
10D06-2207-CT-113

---

**Opinion by Judge Foley**
Judges Vaidik and Weissmann concur.

**Foley, Judge.**

[1] Krista Dorsett ("Dorsett") appeals the order granting summary judgment to Indiana-American Water Company, Inc. ("IAW") on her premises liability claim, which arose from the alleged negligent maintenance of a lid to a water meter pit on her private residential property. The dispositive issue is whether Dorsett's claim is precluded by limitation of liability provisions in IAW's utility tariff. Concluding that the tariff provisions do not apply to the premises liability claim, we reverse summary judgment and remand for further proceedings.

## Facts and Procedural History

[2] Dorsett was a residential customer of IAW when, on September 3, 2021, she allegedly sustained personal injuries when she stepped on a faulty lid to IAW's water meter pit. This equipment was installed in Dorsett's yard, where IAW maintained a utility easement. On July 26, 2022, Dorsett filed this negligence action against IAW. On July 31, 2023, IAW moved for summary judgment, relying on provisions in its tariff on file with the Indiana Utility Regulatory Commission ("IURC"). IAW argued that Section 12 of its tariff, titled "RESPONSIBILITIES AND RIGHTS OF COMPANY," contained two provisions that limited its liability and precluded Dorsett's negligence claim:

> (c) the Company shall not be liable for any damages resulting from the breaking of any Mains or appurtenances, Company Service Lines or Customer Service Lines; from any interruption of the supply of water caused by the malfunction of machinery or facilities or by stoppage thereof for necessary repairs or maintenance; *or from any other act, omission or event* unless due to

gross negligence or willful misconduct on the part of the Company. . . .

(d) the Company shall not be liable for damages resulting from any act, omission, or event caused by strikes, acts of God, unavoidable accidents, or contingencies beyond its control.

Appellant's App. Vol. 2 p. 90 (emphasis added).

Dorsett advanced two main arguments in response, addressing the language in the tariffs and the scope of IURC's regulatory authority. As to the language in the tariffs, Dorsett argued that "[a]n objective reading" was that the limitation of liability provisions did not apply to her claim, noting that the provisions were in a section that "primarily concern[ed] interruptions/fluctuations in water supply and limitations of liability in regards to same[,] not personal injury." *Id.* at 93; *see also id.* at 97 ("What cannot and will not be found in an objective reading of the key section of the submitted tariff is that [IAW] is immune from liability for personal injury."). At the summary judgment hearing, Dorsett emphasized this distinction, pointing out that "the [c]omplaint was not brought in regard[] to services provided," with there being "no allegation that water was cut off" or "water wasn't running and that [IAW] is negligent for that." Tr. Vol. 2 p. 11. Rather, Dorsett characterized the complaint as presenting "a basic, simple negligence claim," *id.* at 10, related to whether IAW "should have inspected [its] easements a little bit more to make sure that everything was safe," *id.* at 11. Dorsett argued that summary judgment revolved around "whether the tariff language applies to this case," asserting that, although she

"appreciate[d] [IAW's] interpretation" of the "tariff language," she was "distinctly argu[ing] that [IAW's interpretation] [was] not the application that should be made by the Court." *Id.* at 10–11. As to public policy, Dorsett presented an "overarching point" that IAW's broad reading of the tariff implicated "a public policy issue" regarding whether it was consistent with "statutory authority" to grant a utility "blanket immunity" in the manner suggested. *Id.* at 12. The trial court granted summary judgment to IAW without explanation, dismissing the case with prejudice. Dorsett now appeals.

## Discussion and Decision

We review summary judgment de novo, applying the same standard as the trial court. *City of Lawrence Utils. Serv. Bd. v. Curry*, 68 N.E.3d 581, 585 (Ind. 2017). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C).

Our legislature granted the IURC broad authority to regulate public utilities, including the power to "formulate rules necessary or appropriate" to carry out that authority. Ind. Code § 8-1-1-3(g); *see generally Prior v. GTE N., Inc.*, 681 N.E.2d 768, 774 (Ind. Ct. App. 1997) (discussing the scope of the IURC's regulatory authority). In exercising this power, the IURC requires a water utility to file a tariff that includes "all rules and regulations covering the relationship between the customer and the utility[.]" 170 Ind. Admin. Code 6-1-26 (2019). Through this process, the tariff is "created by the IURC as an

exercise of properly delegated legislative power." *Prior*, 681 N.E.2d at 775. Therefore, a tariff has the force of a regulation, *see id.*, and "[a] regulation within the authority granted [to] the IURC by the legislature has the effect of law." *Ameritech Pub., Inc. v. Strachan*, 783 N.E.2d 378, 381 (Ind. Ct. App. 2003), *trans. denied*.

[6] The "meaning and effect" of a regulation is a question of law that we review de novo. *Ind. Fam. & Soc. Servs. Admin. v. Culley*, 769 N.E.2d 680, 682 (Ind. Ct. App. 2002); *see also, e.g.*, *Noblesville, Ind. Bd. of Zoning Appeals v. FMG Indianapolis, LLC*, 217 N.E.3d 510, 514 (Ind. 2023). Moreover, regulatory interpretation is subject to the same rules as statutory interpretation. *See Nat. Res. Def. Council v. Poet Biorefining-N. Manchester, LLC*, 15 N.E.3d 555, 564 (Ind. 2014). Our "foremost goal" is to give words and phrases their plain and ordinary meaning "within the context of the regulatory scheme," doing so "in a way that reflects the intent of the agency that promulgated the regulations." *Id.* At the same time, we must be mindful that, under the common law, utility companies "never enjoyed any special treatment or immunity from liability." *Harrison v. Veolia Water Indianapolis, LLC*, 929 N.E.2d 247, 252–53 (Ind. Ct. App. 2010) (emphasis removed), *trans. denied*. Thus, if provisions limit the utility's liability, those provisions are in derogation of the common law and must be strictly construed. *See JPMorgan Chase Bank, N.A. v. Claybridge Homeowners Ass'n, Inc.*, 39 N.E.3d 666, 671 (Ind. 2015); *Tyus v. Indianapolis Power & Light Co.*, 134 N.E.3d 389, 407 (Ind. Ct. App. 2019) (noting that, in general, "immunity is the exception and not the rule"), *trans. denied*.

[7] In challenging the order on summary judgment, Dorsett relies upon the language of the tariff's immunity provisions to distinguish service-related claims and premises liability claims, emphasizing that her claim stems from "the captive customers' common law right to sue a company that negligently cause[d] [them] personal injuries." Appellant's Br. p. 12. Dorsett disputes that "the terms at issue here, in this specific tariff" reflect the IURC's intent to confer "blanket immunity"—i.e., immunity beyond service-related torts, *id.* at 12 n.7—arguing that such a reading would exceed the scope of regulatory authority conferred to the IURC, *id.* at 12–13.

[8] Before we reach Dorsett's argument as to the scope of the IURC's regulatory authority, we first look to the language of the immunity provisions to determine whether it applies to Dorsett's claims. The two provisions state as follows:

> (c) the Company shall not be liable for any damages resulting from the breaking of any Mains or appurtenances, Company Service Lines or Customer Service Lines; from any interruption of the supply of water caused by the malfunction of machinery or facilities or by stoppage thereof for necessary repairs or maintenance; *or from any other act, omission or event* unless due to gross negligence or willful misconduct on the part of the Company. . . .

> (d) the Company shall not be liable for damages resulting from any act, omission, or event caused by strikes, acts of God, unavoidable accidents, or contingencies beyond its control.

Appellant's App. Vol. 2 p. 90 (emphasis added).

[9] The structure and language of this section support a narrow reading of the limitation of liability provisions. The first two clauses of paragraph (c) explicitly reference service-related events: the breaking of mains or service lines and the interruption of water supply. Although the third clause refers to "any other act, omission or event," we must read this catchall phrase in context. *See Lake Cnty. Bd. of Comm'rs v. State*, 181 N.E.3d 960, 969 (Ind. 2022) (explaining that, under the doctrine of ejusdem generis, a catchall phrase following a specific list of items should be interpreted to include only items of the same kind or class as those specifically listed); *see also Shideler v. Dwyer*, 417 N.E.2d 281, 283 (Ind. 1981) (applying the doctrine to limit a broad catchall phrase to items similar to preceding items that were specifically enumerated). Here, the preceding provisions specifically address service-related events, thereby limiting application of "any other act, omission or event" to other types of service-related events.

[10] This narrow interpretation aligns with Dorsett's argument that, although a tariff may address specific duties related to utility service, public policy cautions against allowing broad language to produce "blanket immunity" from all negligence claims. *See* Appellant's Br. pp. 12–13. This narrow interpretation also aligns with our decision in *Tyus*, which involved whether tariff provisions limiting liability for service interruptions could apply to personal injuries sustained by non-customers in a car accident caused by an inoperable traffic light. In that case, we determined that the IURC lacked the regulatory authority to immunize a utility from a non-customer's personal injury claim.

*See Tyus*, 134 N.E.3d at 403–07. To the extent *Tyus* suggests that the IURC has the regulatory authority to immunize a utility from a *customer's* personal injury claim, we note that *Tyus* involved injury stemming from a service interruption, not a premises liability claim like the one at issue here. *See id.* at 393–408.

[11] In sum, because we conclude that the limitation of liability provisions in the tariff do not extend to Dorsett's premises liability claim, we hereby reverse summary judgment and remand for further proceedings on the complaint.[1]

[12] Reversed and remanded.

Vaidik, J. and Weissmann, J., concur.

ATTORNEY FOR APPELLANT

J. David Agnew
Lorch Naville Ward LLC
New Albany, Indiana

ATTORNEY FOR APPELLEE

Charles A. Walker
Sewell & Neal, PLLC
Louisville, Kentucky

---

[1] Resolving this case by construing the plain and ordinary language of the tariff, we need not address Dorsett's broader argument that the IURC lacks authority to immunize utilities from premises liability claims.