GARY COMMUNITY SCHOOL CORPORATION, Appellant–Defendant,

v.

Neal BOYD III and Theresa Stanback, As parents of Neal Boyd IV, Appellees–Plaintiffs.

No. 45A04–0702–CV–96.

Court of Appeals of Indiana.

July 29, 2008.

Tracy A. Coleman, Robert L. Lewis and Associates, Gary, IN, Attorney for Appellant.

C. Anthony Ashford, Merrillville, IN, Attorney for Appellees.

## OPINION

KIRSCH, Judge.

Gary Community School Corporation ("GCSC") appeals a jury verdict in favor of Neal Boyd III and Theresa Stanback (collectively "Parents"), as parents of Neal Boyd IV ("Neal") on Parents' claim of negligence against GCSC for the death of Neal, which occurred at Lew Wallace High School ("Lew Wallace"), a part of GCSC. GCSC raises several issues, of which we find the following dispositive: whether the trial court abused its discretion in admitting evidence of prior acts of violence that had occurred at or around Lew Wallace. In addition, because it will arise on remand, we address the following issue: whether the trial court erred in denying GCSC statutory immunity under the Indiana Tort Claims Act.

We affirm in part, reverse in part, and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

On March 30, 2001, at approximately 8:15 a.m., sixteen-year-old Neal was dropped off by his mother at Lew Wallace, where he attended high school. After he arrived, Neal went to the area where students generally congregated prior to classes beginning. While he waited for classes to start, Neal was shot and killed by Donald Burt, who, at that time, was not a student at Lew Wallace. Burt had been expelled the previous school year and had withdrawn for the 2000–2001 school year. When Burt attended Lew Wallace, a Behavioral Assessment was completed, which stated that he exhibited aggressive behavior and had expressed homicidal ideations.

*Appellant's App.* at 87–94. Burt was eventually convicted for the murder of Neal.

In the morning before classes began at Lew Wallace, there were two security officers and several administrators and supervisory aides on duty to supervise the students and provide security for the campus. The two security officers, who were employees of GCSC and also Gary Police officers, were primarily responsible for securing the outside of the campus, particularly the south side of the building, which is where the students were required to enter. The officers were to remain outside until the bell rang at 8:30 a.m., when one would go inside to assist at the metal detectors as students entered, and the second would remain outside. If a security officer had to leave his post, he was to contact an administrator and ensure he was replaced before leaving his post.

On the morning of the shooting, prior to the 8:30 a.m. bell, Officer Henry Davis, one of the security officers, was located outside the school monitoring the drop-off of students. Officer Jeffery Tatum, the second security officer, was inside of the school assisting at the metal detectors. At approximately 8:15 a.m., Officer Davis encountered a student whose name appeared on the suspension list and who was not supposed to be on the school campus. Because this student was trespassing, Officer Davis escorted the student into the building to Officer Tatum. While Officer Davis was inside of the building, Burt entered the school grounds and shot Neal.

Parents filed a complaint against GCSC alleging that GCSC was negligent in failing to exercise reasonable care and supervision for the safety, security, and protection of the students at Lew Wallace, including Neal, and that GCSC's negligence was a proximate cause of Neal's death. A jury trial was initially held on June 13–16, 2006 and ended in a

mistrial. A second jury trial was held on January 22–26, 2007. Prior to the second trial, Parents filed a trial brief seeking to admit evidence of prior criminal acts at or around Lew Wallace. The trial court ultimately entered an order allowing Parents to present limited evidence regarding prior acts of violence occurring at or around Lew Wallace. At the conclusion of the trial, the jury awarded a verdict for Parents. GCSC now appeals. Additional facts will be added as necessary.

## DISCUSSION AND DECISION

### I. Admission of Evidence of Prior Acts of Violence

■■■ The decision to admit or exclude evidence is within the sound discretion of the trial court and will only be reversed upon a manifest abuse of that discretion. *Davidson v. Bailey*, 826 N.E.2d 80, 85 (Ind.Ct.App.2005) (quoting *Bacher v. State*, 686 N.E.2d 791, 793 (Ind.1997)). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Stowers v. Clinton Cent. Sch. Corp.*, 855 N.E.2d 739, 748 (Ind.Ct.App. 2006), *trans. denied* (2007). We will not reverse the trial court's admission of evidence absent a showing of prejudice. *Id.*

GCSC argues that the trial court abused its discretion in allowing Parents to admit evidence of prior acts of violence at or around Lew Wallace. Specifically, they contend that these incidents of prior violence were not related or similar occurrences to the shooting of Neal because they did not all involve students and did not all occur on school property. GCSC claims that the admission of such evidence was error and prejudiced them in obtaining a fair trial.

The challenged evidence included: a shooting of a Lew Wallace student, which occurred in February 1993 as the student walked home from school; a drive-by shooting that occurred at Lew Wallace in September 1996; a shooting of a Lew Wallace student in October 1997 at a high school football game; the arrest of a student for carrying a weapon onto school property in April 1999; a student from Lew Wallace being shot in the head as she walked home from school in September 1999; and an incident where a man fired a gun at a neighboring school in April 2000. *Tr.* at 1267–72, 1328–29, 1610–13, 1834–37. This evidence was presented through several witnesses and was also utilized by Parents' expert in his conclusion that it was reasonably foreseeable to GCSC that an incident such as the shooting of Neal could occur and that GCSC should have been aware of such a risk. *Tr.* at 1736–37, 1752.

■■■ "In cases involving the existence of an alleged dangerous condition evidence of the occurrence of prior accidents of a similar character under the same circumstances is admissible to show both the existence of the dangerous condition and notice thereof." *State By and Through Ind. State Highway Comm'n v. Fair*, 423 N.E.2d 738, 740 (Ind.Ct.App.1981). Such evidence is not admissible unless a similarity is shown between the essential conditions surrounding the prior accidents and the one at issue. *Id.* The key to admission is similarity, and the party seeking admission of the evidence must lay a proper foundation by demonstrating sufficient similarity of circumstances and conditions before such evidence may be admitted. *Id.* A proper foundation includes the general requirements of similarity of conditions, reasonable proximity in time, and avoidance of confusion of the issues. *Id.* at 741 (quoting 29 Am.Jur.2d *Evidence* § 307, at 353 (1967)).

Here, Parents failed to lay a proper foundation for the evidence of prior acts of violence at or around Lew Wallace to be admitted at trial. First, several of the incidents of violence occurred remotely in time from the shooting of Neal. These occurrences happened eight years, five years, and four years before Neal was shot. Second, there was no similarity between such incidents and the tragic case before us. In one, a student was hit by a stray bullet at a football game, which was not during school hours. Two involved students either being shot or struck by a stray bullet while walking home from school and not being on school property. The remaining incidents included a drive-by shooting where no one was shot, a student being arrested for carrying a weapon to school, and a man shooting a weapon into the air at a neighboring school. None of these occurrences involved similar circumstances to the present case where a former student shot another student on school grounds during the morning while students gathered outside before the bell rang. Under these circumstances, the foundational requirements for the admission of such evidence were not met.

We must now determine whether the admission of the evidence of prior violence was prejudicial to GCSC. We may not reverse the trial court's admission of evidence absent a showing of prejudice. *Stowers*, 855 N.E.2d at 748. Here, the jury heard several different witnesses testify about the prior occurrences. The incidents were also relied upon by Parents' expert in making his opinions about the foreseeability of the present incident. Finally, in both opening and closing statements to the jury, plaintiffs' counsel referenced the prior incidents. The admission of the evidence of prior incidents of violence at or around Lew Wallace was prejudicial to GCSC. The trial court therefore abused its discretion and the admission of the evidence of prior violence was reversible error.[1]

## II. Immunity Under the Indiana Tort Claims Act

Because it will affect whether a new trial should be held, we will determine the issue of whether GCSC is entitled to immunity under the Indiana Tort Claims Act. The Indiana Tort Claims Act ("ITCA") governs tort claims against governmental entities and public employees. *Brown v. Alexander*, 876 N.E.2d 376, 380 (Ind.Ct.App.2007), *trans. denied.* "Pursuant to the ITCA, 'governmental entities can be subjected to liability for tortious conduct unless the conduct is within an immunity granted by Section 3 of [the] ITCA.'" *Id.* (quoting *Oshinski v. N. Ind.*

---

**1.** While we do not analyze the admission of the prior acts of violence under the balancing test set forth in Indiana Rule of Evidence 403, we believe such an analysis would lead to the same conclusion. In the post-Columbine world in which we live, the potential for random acts of gun violence at our schools is all too foreseeable. This factor coupled with the remoteness in time and lack of similarity of the prior incidents render the prior incidents of minimal probative value. At the same time, the prejudicial effect of such evidence is substantial. As our Supreme Court observed in *King v. Northeast Security, Inc.,* 790 N.E.2d 474, 483 (Ind.2003):

[S]chools are authorized to promulgate rules for school discipline. But preventing crime is not an activity schools are expected to carry out pursuant to a school's operational purpose. Put another way, even though the school must reasonably supervise the students for safety reasons, it is not the mission of the school to prevent crime. Allowing evidence of prior incidents of violence to students of Lew Wallace that are unrelated and dissimilar to the act of violence here in the absence of any showing of a duty owed by the school system to such students or any breach of such duty has minimal probative value and substantial prejudicial effect.

*Commuter Transp. Dist.,* 843 N.E.2d 536, 543 (Ind.Ct.App.2006)). GCSC argues that it is entitled to immunity under three different subsections of the ITCA, IC 34–13–3–3(7), (8), and (10). The party claiming immunity bears the burden of establishing that its conduct comes within the ITCA. *King v. Ne. Security, Inc.,* 790 N.E.2d 474, 480 (Ind.2003).

GCSC first contends that it is entitled to immunity under IC 34–13–3–3(7), which grants immunity for the "performance of a discretionary function." In *Peavler v. Board of Commissioners of Monroe County,* 528 N.E.2d 40, 45 (Ind. 1988), our Supreme Court developed the "planning/operational" test for determining whether a particular function is discretionary. *Chandradat v. State, Ind. Dep't of Transp.,* 830 N.E.2d 904, 911 (Ind.Ct.App. 2005), *trans. denied.* Through this test, " 'we distinguish between decisions involving the formulation of basic policy, entitled to immunity, and decisions regarding only the execution or implementation of that policy, not entitled to immunity.' " *Id.* (quoting *Greathouse v. Armstrong,* 616 N.E.2d 364, 366–67 (Ind.1993)). The critical inquiry is not merely if judgment was exercised, but if the nature of the judgment called for policy considerations. *Id.* "The governmental entity seeking to establish immunity bears the burden of proving that the challenged act or omission was a policy decision made by consciously balancing risks and benefits." *Peavler,* 528 N.E.2d at 46.

Here, the alleged negligence by GCSC was the failure to exercise reasonable care and supervision for the safety, security, and protection of the students at Lew Wallace, including Neal. GCSC bore the burden to show that a policy decision, consciously balancing risks and benefits, took place regarding the location of its security and the need for replacement security. Because it did not present any evidence to show that its decisions regarding security were the result of such a process, we conclude that GCSC is not entitled to immunity under IC 34–13–3–3(7).

GCSC secondly contends that it is entitled to immunity under IC 34–13–3–3(8), which allows immunity for "[t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations)...." In *King,* our Supreme Court concluded that, "the legislature intended that a governmental entity be immune only for failing to adopt or enforce a law that falls within the scope of its purpose or operational power." 790 N.E.2d at 483. It further stated that, "even though the school must reasonably supervise the students for safety reasons, it is not the mission of the school to prevent crime." *Id.* The Court then held that a school has no immunity for failing to prevent an assault and battery, and "immunity for 'enforcement' of laws prohibiting an assault and battery is reserved to governmental units with police powers—not schools." *Id.* at 484. Although schools must exercise reasonable care and supervision for the safety of the children under their control, they are not charged with general law enforcement on their premises. *Id.* We therefore conclude that GCSC is not entitled to immunity under IC 34–13–3–3(8) as it has no immunity for the failure to prevent the crime of murder on its premises.

Lastly, GCSC claims that it is immune under IC 34–13–3–3(10), which allows immunity for "[t]he act or omission of anyone other than the governmental entity or the governmental entity's employee." Immunity under this subsection "applies in 'actions seeking to impose vicarious liability by reason of conduct of third parties' other than governmental employees acting within the scope of their employment." *King,* 790 N.E.2d at 481 (quoting *Hinshaw v. Bd.*

*of Comm'rs of Jay County,* 611 N.E.2d 637, 640–41 (Ind.1993)). Here, the Parents' complaint did not allege that GCSC was vicariously liable for the conduct of Burt; they alleged that GCSC was liable because of its *own* negligence in failing to exercise reasonable care and supervision for the safety of its students. Parents' claims against GCSC relate solely to the acts or omissions of GCSC's employees and not a third party. Therefore, GCSC is not entitled to immunity under IC 34–13–3–3(10).

Affirmed in part, reversed in part, and remanded for a new trial.

FRIEDLANDER, J., and BAILEY, J., concur.