# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**MICHAEL B. LANGFORD**
**R. JAY TAYLOR, JR.**
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KRISTIN GARN**
Deputy Attorney General
Indianapolis, Indiana



FILED
Sep 25 2014, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| AVERITT EXPRESS, INC., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 67A05-1403-CC-108 |
| | ) | |
| STATE OF INDIANA ex rel. INDIANA | ) | |
| DEPARTMENT OF TRANSPORTATION, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PUTNAM CIRCUIT COURT
The Honorable Matthew L. Headley, Judge
Cause No. 67C01-1304-CC-160

**September 25, 2014**

**OPINION - FOR PUBLICATION**

**BARTEAU, Senior Judge**

## STATEMENT OF THE CASE

Averitt Express, Inc., appeals the trial court's denial of its motion for summary judgment and grant of summary judgment in favor of the State of Indiana, acting on behalf of the Indiana Department of Transportation (INDOT). We affirm in part, reverse in part, and remand.

## ISSUES

Averitt raises two issues, which we expand and restate as:

I.  Whether the trial court abused its discretion by denying in part Averitt's motion to strike.

II. Whether the trial court erred in denying Averitt's motion for summary judgment.

III. Whether the trial court erred in granting the State's motion for summary judgment.[1]

In addition, the State raises a cross-appeal issue: whether the trial court abused its discretion by granting in part Averitt's motion to strike.

## FACTS AND PROCEDURAL HISTORY

On August 17, 2011, John Goins, an Averitt employee, operated a semi-truck in the course of his employment. Averitt owned the truck. As Goins drove through Putnam County, Indiana, he collided with another semi-truck on Interstate Highway 70. Averitt's semi-truck caught fire. Goins died, and Averitt's truck was destroyed. Indiana State Trooper Brandon Mullen went to the scene and prepared a crash report.

---

[1] Averitt has filed a Motion for Oral Argument. We deny the motion by separate order.

The collision and fire damaged the highway and a guardrail. INDOT had previously contracted with Milestone Contractors, LP, to do repair work on Highway 70. After the accident, INDOT asked Milestone to perform an emergency repair of the damage. INDOT incurred $59,968.65 in repair costs caused by the collision.

The State sued Averitt. The State alleged that Averitt, through Goins, negligently damaged the highway and guardrail, resulting in damages. Averitt filed an answer and a demand for jury trial.

Next, the parties filed cross-motions for summary judgment. Averitt also filed a motion to strike portions of the evidence designated by the State, specifically Mullen's crash report and paragraph six of an affidavit signed by Mullen.

The trial court granted the motion to strike in part and denied it in part. The court determined that paragraph six of the affidavit was stricken from the record but declined to strike the crash report, deeming it a statement of opinion by a skilled witness under Indiana Rule of Evidence 701. Appellant's App. p. 82. The court granted the State's motion for summary judgment, thereby implicitly denying Averitt's motion for summary judgment, and entered judgment accordingly. This appeal followed.

## DISCUSSION AND DECISION

### I. ADMISSION AND EXCLUSION OF EVIDENCE

The parties challenge the trial court's ruling on Averitt's motion to strike. The trial court has broad discretion in ruling on the admissibility of evidence. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 5 (Ind. 2010). This discretion extends to rulings on motions to strike affidavits on grounds that they fail to comply with the summary judgment rules.

3

*Price v. Freeland*, 832 N.E.2d 1036, 1039 (Ind. Ct. App. 2005). Indiana Trial Rule 56(E) provides, in relevant part, that affidavits submitted on summary judgment must "set forth such facts as would be admissible in evidence."

Averitt argues that Trooper Mullen's crash report was inadmissible because it contains hearsay, and the trial court should have granted its motion to strike the report. Hearsay is a statement that is not made by the declarant while testifying and is offered in evidence to prove the truth of the matter asserted. Ind. Evid. Rule 801(c). Hearsay is inadmissible unless it falls under an exception provided by the Indiana Rules of Evidence or by statute. Ind. Evid. Rule 802.

Mullen's crash report contains witness statements, which appear to be hearsay. The State argues that Mullen's report is admissible, despite containing hearsay statements, because it is a public record. Indiana Evidence Rule 802 does not bar the admission of a public record, which is defined as follows:

A record or statement of a public office if:

(i) it sets out:

(a) the office's regularly conducted and regularly recorded activities;

(b) a matter observed while under a legal duty to [observe and] report; or

(c) factual findings from a legally authorized investigation; and

(ii) neither the source of information nor other circumstances indicate a lack of trustworthiness.

4

Ind. Evidence Rule 803(8)(A). However, there are exceptions to the admissibility of public records, as follows:

> the following are not excepted from the hearsay rule:
>
>> (i) investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case;
>>
>> (ii) investigative reports prepared by or for a public office, when offered by it in a case in which it is a party;
>>
>> (iii) factual findings offered by the government in a criminal case; and
>>
>> (iv) factual findings resulting from a special investigation of a particular complaint, case, or incident, except when offered by an accused in a criminal case.

Ind. Evidence Rule 803(8)(B). The rule specifically excludes a police investigative report, such as Mullen's, unless it is offered by the accused in a criminal case. The State, as the party that offered Mullen's report, is not the defendant here. Furthermore, this is not a criminal case. The trial court thus should have struck it from evidence. *See In re Paternity of P.E.M.*, 818 N.E.2d 32, 38 (Ind. Ct. App. 2004) (trial court did not err by excluding police reports from evidence in a civil case).

The State asserts that police reports may be admitted in civil matters if they address "'routine, ministerial, objective nonevaluative matters made in non-adversarial settings.'" Appellee's Br. p. 9 (quoting *Fowler v. State*, 929 N.E.2d 875, 879 (Ind. Ct. App. 2010), *trans. denied*). The State correctly characterizes the holding in *Fowler*, but that holding is inapplicable to Mullen's report. In *Fowler*, the record at issue was a police booking report, which this Court characterized as being prepared as part of "a

ministerial, nonevaluative booking process." 929 N.E.2d at 879. By contrast, Mullen's report was not routine but rather was generated during an investigation into an accident resulting in a fatality and property damage. In addition, the facts are disputed, and Mullen evaluated the evidence and expressed an opinion on the cause of the accident. *Fowler* is thus inapplicable.

Turning to Mullen's affidavit, the State asserts that the affidavit is entirely admissible.[2] Appellee's Br. p. 11. The affidavit's paragraph six, which the trial court struck, states, "John Goins, driver of the 2008 Volvo semi-truck, was not paying attention to the road and did not see that traffic was stopped." Appellant's App. p. 46.

Although Mullen represented in the affidavit that he had "personal knowledge of the facts set forth herein," *id.* at 46, he also acknowledged that he investigated the accident after the fact. Further, the affidavit refers to Mullen's crash report, which included witness statements.

Paragraph six of the affidavit is based at least in part on hearsay, rather than solely upon Mullen's personal observations. As a result, the trial court did not abuse its discretion by striking it. *See Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.*, 773 N.E.2d 881, 887 (Ind. Ct. App. 2002) (trial court did not abuse its discretion by striking paragraphs from an affidavit because they were based on hearsay), *trans. dismissed*.

The State claims that Mullen's opinion on the cause of the accident, as expressed in his affidavit, is admissible because it is a statement by a skilled witness. A witness

---

[2] The State does not acknowledge that the trial court struck paragraph six. We consider the State's argument that paragraph six is admissible to be a cross-appeal issue.

6

that does not qualify as an expert may still provide opinion testimony if the opinion is "rationally based on the witness's perception; and . . . helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue." Ind. Evid. Rule 701. A skilled witness offering an opinion under Rule 701 may not base the opinion on information received from others or on a hypothetical question. *Ostrowski v. Everest Healthcare Ind., Inc.*, 956 N.E.2d 1144, 1150 (Ind. 2011).

Here, Mullen developed his opinion during his post-accident investigation. As his report indicates, he considered what witnesses told him about the accident. His opinion is thus based in part on information received from others, so it is not admissible under Rule 701. The court did not abuse its discretion in striking paragraph six.

## II. DENIAL OF AVERITT'S SUMMARY JUDGMENT MOTION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56; *State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce*, 762 N.E.2d 1227, 1230 (Ind. 2002). We construe all facts and reasonable inferences drawn therefrom in a light most favorable to the non-moving party. *State Farm*, 762 N.E.2d at 1230. Although the nonmovant has the burden of demonstrating the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied its day in court. *Ind. Dep't of Envtl. Mgmt. v. Med. Disposal Servs., Inc.*, 729 N.E.2d 577, 579 (Ind. 2000).

The fact that the parties have filed cross-motions for summary judgment does not alter our standard of review, as we consider each motion separately to determine whether

7

the moving party is entitled to judgment as a matter of law. *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012).

Averitt argues that it, rather than the State, is entitled to summary judgment as a matter of law because the State lacked the authority to sue it for damage to the highway and the guardrail. Resolving this issue requires review of several statutes. Our Supreme Court has stated:

> In the interpretation of statutes, our goal is to determine and give effect to the intent of the legislature in promulgating it. But in determining the intent of the legislature, we look first to the statutory language chosen by the legislature and we presume that the words were selected and employed to express their common and ordinary meanings. Where the statute is unambiguous, the Court will read each word and phrase in this plain, ordinary, and usual sense, without having to resort to rules of construction to decipher meanings.

*Clark v. Clark*, 971 N.E.2d 58, 61 (Ind. 2012) (quotations and citations omitted).

We presume the legislature intended the language used in a statute to be applied logically, consistent with the statute's underlying policy and goals, and not in a manner that would bring about an unjust or absurd result. *Cooper Indus. v. City of S. Bend*, 899 N.E.2d 1274, 1283 (Ind. 2009). To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the nature of the statute. *Floyd Cnty. v. City of New Albany*, 1 N.E.3d 207, 215 (Ind. Ct. App. 2014), *trans. denied*.

The General Assembly sets forth INDOT's powers in Indiana Code section 8-23-2-6 (2005). According to that statute, INDOT may purchase and hold property in the name of the State. Ind. Code § 8-23-2-6(a)(1). The General Assembly also authorized

8

INDOT to "perform all actions necessary to carry out the department's responsibilities." Ind. Code § 8-23-2-6(a)(13). INDOT has the power to "sue and be sued, including, with the approval of the attorney general, the compromise of any claims of the department." Ind. Code § 8-23-2-6(a)(4).

The statute is clear and unambiguous. Reading its subsections together in their plain and ordinary sense, INDOT is authorized to perform all actions necessary to protect the property it holds in the name of the State, including pursuing litigation. The most reasonable reading of these provisions is that INDOT may seek redress in court, through the attorney general's representation, when its property is damaged through negligence. If Averitt's view prevailed, INDOT would be allowed to hold property but, when that property is damaged through clearly identifiable negligence or even intentional misconduct, would not be able to hold the party liable for the harm it caused. We must read the statute in a manner that avoids this absurd result.

Averitt notes that other statutes authorize INDOT to file suit in specific circumstances. *See, e.g.*, Ind. Code § 8-23-2-5 (2014) (authorizing INDOT to sue to recover costs resulting from violation of rules governing relocation of utility facilities); Ind. Code 8-23-9-25 (1990) (authorizing INDOT to sue to collect funds related to nonperformance of a highway construction contract); Ind. Code § 8-23-20-3 (1990) (authorizing the State to sue the United States Department of Commerce over disputes about funds or billboards); Ind. Code § 9-20-18-11 (1991) (authorizing the State to sue the owner of a vehicle that is unlawfully moved on a state highway or bridge and causes damage to the highway or bridge). Averitt argues that if Indiana Code section 8-23-2-6

9

generally authorizes INDOT to file suit for damages caused by negligence, then these statutes are "meaningless" and "pointless." Appellant's Br. p. 15. This argument misses the mark. The statutes cited by Averitt address specific circumstances, and they carry out, rather than contradict, Indiana Code section 8-23-2-6's grant of authority to INDOT to file suit. We can, and must, read those statutes and Indiana Code section 8-23-2-6 in harmony and give them all full effect.

In the alternative, Averitt argues that these statutes entirely encompass INDOT's authority to file suit, under the principle "expression unius est exclusion alterius" (the enumeration of certain things in a statute necessarily implies the exclusion of all others), and concludes the State cannot sue it because the facts of this case do not fit the circumstances of those statutes. Appellant's Br. p. 16 (quoting *T.W. Thom Constr., Inc. v. City of Jeffersonville*, 721 N.E.2d 319, 325 (Ind. Ct. App. 1999)). The principle Averitt cites is limited in scope to an enumeration in *a* statute. Here, Averitt has cited several statutes, which were enacted at different times to address different circumstances. A review of these statutes in conjunction with Indiana Code section 8-23-2-6 does not compel a conclusion that the General Assembly intended to limit INDOT's power to sue to those circumstances.

Next, Averitt claims that the State cannot sue it for damages it allegedly caused to the highway and guardrail because the public pays for highway maintenance through tax-funded expenditures. Averitt reasons the General Assembly cannot have intended for the State to recover in tort for payments for "routine" functions such as maintenance. Appellant's Br. p. 9.

10

In support of its claim, Averitt cites numerous cases from other jurisdictions, but none from Indiana. Averitt relies primarily upon *United States v. Standard Oil Co. of Cal.*, 332 U.S. 301, 67 S. Ct. 1604, 91 L. Ed. 2d 2067 (1947). In that case, a truck owned by Standard Oil struck a solider, who was hospitalized and unable to fulfill his duties for a time. 332 U.S. at 302. The United States sued Standard Oil to recover the amounts it had expended to provide medical treatment and to provide disability pay to the solider. *Id.* The United States Supreme Court said the matter was not to be decided by state law, but rather by federal precedents, because (1) the "government-soldier relation [is] distinctively and exclusively a creation of federal law," (2) the right of the government to be indemnified under those facts should not "vary in accordance with the rulings of the several states," and (3) "the liability sought is not essential or even relevant to the protection of the state's citizens against tortious harms." *Id.* at 310. The Court concluded that the United States was asking it to establish a "new liability," and such a determination was a matter for Congress. *Id.* at 316.

By contrast, the current case does not involve a government-soldier relationship or federal common law. Further, the United States was not directly harmed by Standard Oil's tortious conduct, but in this case, the State's property was directly damaged by the alleged negligence of Averitt's employee. Finally, the State is not asking us to establish a new form of liability, but rather to apply Indiana's well-established principles of negligence to this case. Thus, *Standard Oil* is distinguishable, and we find the other authorities cited by Averitt on this point to also be inapplicable.

11

Although Indiana's citizens and businesses pay taxes for routine road construction and maintenance, the damage here was far from routine. Rather than arising from normal wear and tear, the damage to the highway and guardrail was allegedly caused by the negligent behavior of Averitt's employee. The State paid $59,968.65 to repair the damage, which is money that it would not have otherwise spent at that time. The General Assembly, through Indiana Code section 8-23-2-6, granted INDOT the authority to seek compensation for damage to its property, and under these circumstances INDOT's costs may be recoverable by a tort action, if liability is proven. To hold otherwise would require Indiana's taxpayers to subsidize tortfeasors' acts of negligence that damage highways and related fixtures.

Finally, Averitt notes that it is an Indiana taxpayer, having paid state income taxes, fuel taxes, and fees over the years, and asserts that it has already paid its share for road repair work. Appellant's Br. p. 11. Again, the damage that allegedly resulted from the alleged negligence of Averitt's employee was unexpected and was not paid for by planned, routine expenditures for maintenance. The evidence in the light most favorable to the nonmovant (the State, for purposes of Averitt's motion) is that INDOT did not plan to spend $59,968.65 to repair the road but was forced to do so on an emergency basis as a result of alleged negligence.

For these reasons, the State was authorized to sue Averitt in tort, and the trial court correctly determined that Averitt is not entitled to summary judgment as a matter of law.

### III. GRANT OF SUMMARY JUDGMENT TO THE STATE

Averitt argues that without the crash report and paragraph six of the affidavit, the State did not establish the absence of a dispute of material fact as to its claim for negligence.

The tort of negligence has three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) injury to the plaintiff proximately caused by the breach. *Cincinnati Ins. Co. v. Davis*, 860 N.E.2d 915, 923 (Ind. Ct. App. 2007).

We have concluded that the trial court abused its discretion in considering Mullen's crash report, but it acted within its discretion in striking paragraph six of his affidavit. Examining the remaining evidence in the light most favorable to the nonmovant (Averitt, for the purposes of the State's motion), the State did not submit evidence to establish that Averitt, through Goins, breached a duty and proximately caused the damage to the highway and guardrail. Under these circumstances, we must reverse the trial court's grant of summary judgment to the State and remand for trial.[3]

### CONCLUSION

The trial court properly denied Averitt's motion for summary judgment. However, although the State was legally authorized to file suit for damage to its property, a dispute of material fact precludes the entry of summary judgment for the State. For the reasons stated above, we affirm the judgment of the trial court in part, reverse in part, and remand for further proceedings.

Affirmed in part, reversed in part, and remanded.

---

[3] We express no opinion on the admissibility of the crash report or Trooper Mullen's testimony at trial.

13

NAJAM, J., concurs.

BRADFORD, J., concurs with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| AVERITT EXPRESS, INC., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 67A05-1403-CC-108 |
| | ) | |
| STATE OF INDIANA ex rel INDIANA | ) | |
| DEPARTMENT OF TRANSPORTATION, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BRADFORD, Judge, concurring.**

While I concur with the disposition of the issues in all respects, I write separately to share some thoughts on both the admissibility of police-prepared accident reports and paragraph six of Trooper Mullen's affidavit.

## I. Trooper Mullen's Accident Report

I agree that Trooper Mullen's accident report should have been struck from the designated evidence, because it is clearly an "investigative" report authored by law-enforcement, prepared after interviewing witnesses and evaluating the physical evidence at the scene. *See* Evid. R. 803(8)(B)(i). That said, the traditional rationale for excluding police reports does not seem to apply under the facts of this case. As this court observed in *Fowler v. State*, 929 N.E.2d 875, 879 (Ind. Ct. App. 2010), *trans. denied*, the reason

for excluding police reports is that "observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases." An accident report used in a *civil* case, on the other hand, strikes me as a different animal, because, while an accident might give rise to adversaries in civil litigation, the agency employing the investigating police officer is not likely to be one of them. If Trooper Mullen or the Indiana State Police had a dog in this particular fight, it is not apparent from the record. So, even though this is a civil case and there is no reason to doubt Trooper Mullen's impartiality in preparing his report, Indiana Evidence Rule 803(8)(B)(i) clearly excludes "investigative reports by police and other law enforcement personnel, except when offered by an accused in a criminal case[.]"

While I acknowledge that similar reports are admissible in at least some other jurisdictions, these jurisdictions appear to all have a "public records" exclusion based on the Federal Rule of Evidence 803,[4] while Indiana's (and those of approximately ten other states) is based on the 1974 version of the Uniform Rules of Evidence. *See*, 13 Robert Lowell Miller, Jr., Indiana Evidence § 803.108F, at 898 (3d ed. 2007). Federal Rule of

---

[4] *See, e.g.*, *Simmons v. Chicago & Nw. Transp. Co.*, 993 F.2d 1326, 1327 (8th Cir. 1993) (concluding that police accident report was admissible in suit by commercial driver against his trucking company on basis that "Rule 803(8)(C) of the Federal Rules of Evidence specifically provides that such records are not excludable as hearsay if the indicia of trustworthiness are present"); *McRae v. Echols*, 8 S.W.3d 797, 800 (Tex. App. 2000) (concluding that police accident report was admissible pursuant to Texas Evidence Rule 802(8), which provides for admissibility of public records "in civil cases as to any party and in criminal cases as against the state, factual findings resulting from an investigation made pursuant to authority granted by law"); *Gardner v. Comm'r of Pub. Safety*, 423 N.W.2d 110, 114 (Minn. Ct. App. 1988) (concluding that it was within trial court's discretion to consider police report and police letter to Commissioner of Public Safety pursuant to Minnesota Rule of Evidence 803(8)(c), which provides "for the admission of statements of public agencies that set forth 'factual findings resulting from an investigation made pursuant to authority granted by law,' unless a lack of trustworthiness is indicated").

16

Evidence 803(8) provides, in part, that the following is not excluded by the rule against hearsay: "A record or statement of a public office if … it sets out[,] in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation[.]" Notably, Federal Rule 803(8) specifically provides for the admissibility of public records in civil cases, unlike Indiana's rule. In summary, I agree that Indiana's version of Evidence Rule 803 requires exclusion of Trooper Mullen's report, even though there does not seem to be any reason to doubt its reliability.

## II. Paragraph Six of Trooper Mullen's Affidavit

I also agree that paragraph six of Trooper Mullen's affidavit was properly struck. Trooper Mullen's affidavit was offered as being based on his personal knowledge, and the State on appeal argues that he was qualified as a skilled witness to offer the opinions set forth in his affidavit, that is, who caused the accident. As the majority points out, however, a skilled witness's opinion testimony may not be based on information received from others, as was the case here. Pursuant to Indiana Evidence Rule 701, which governs the admissibility of opinion testimony by so-called "skilled" witnesses,

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

"A skilled witness is a person with 'a degree of knowledge short of that sufficient to be declared an expert under [Indiana Evidence] Rule 702, but somewhat beyond that possessed by the ordinary jurors.'" *Kubsch v. State*, 784 N.E.2d 905, 922 (Ind. 2003) (quoting 13 Robert Lowell Miller, Jr., Indiana Evidence § 701.105, at 318 (2d ed. 1995)).

The Indiana Supreme Court has made it clear that "perception" does not include "perceiving" what another person is telling you:

> "Perception" has been defined as "[t]he process, act, or faculty of perceiving …. [i]nsight, intuition, or knowledge gained by perceiving." *The American Heritage College Dictionary* 1014 (3d ed. 1993). In turn, "perceive" has been defined as "[t]o become aware of directly through any of the senses, esp. sight or hearing." *Id*. at 1013.

*Kubsch*, 784 N.E.2d at 922 (concluding that opinion testimony from police officer was inadmissible because "[t]here was nothing that Detective Richmond either saw or heard at the scene of the crime, or became aware of through his other senses, that supported the basis for his opinion."); *see also* Robert L. Miller, Courtroom Handbook on Indiana Evidence 262 (2013) (in order for skilled witness pursuant to Indiana Evidence Rule 701, witness "must provide a basis sufficient for the judge to find that the witness is testifying from personal knowledge rather than upon hearsay or the opinions of another"). Because Trooper's Mullen's opinions regarding the cause of the accident are based, at least in part, on witness interviews, he will have to be qualified, if possible, as an expert under Indiana Evidence Rule 702 if he is to offer them at trial.