## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 13 2016, 9:26 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jonathan C. Little
David E. Miller
Jessica A. Wegg
Saeed & Little
Indianapolis, Indiana

Nicholas F. Baker
The Hastings Law Firm
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Mark D. Gerth
James W. Roehrdanz
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James Long,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Gordon Homes, Jr.,<br>*Appellee-Defendant.* | July 13, 2016<br><br>Court of Appeals Case No.<br>49A05-1510-CT-1737<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Timothy Oakes, Judge<br><br>Trial Court Cause No.<br>49D02-1405-CT-014997 |

**Bailey, Judge.**

[1]

# Case Summary

Appellant-Plaintiff James Long ("Long") filed a negligence claim against Appellee-Defendant Gordon Homes, Jr. ("Homes") and a jury returned a verdict in favor of Homes. Long appeals, presenting the sole issue of whether the trial court abused its discretion by admitting a redacted police report into evidence. We affirm.

# Facts and Procedural History

On January 21, 2014, Homes drove to St. Vincent's Hospital in Indianapolis to pick up his wife, Alice Homes ("Alice"), who was being discharged after surgery. Homes drove his vehicle into a horseshoe drive and stopped; a St. Vincent's nurse then assisted Alice into the vehicle. Homes began to move his vehicle forward when Long, a St. Vincent's pharmacist, either ran or walked into the horseshoe drive. Long was either impacted by Homes's vehicle or slipped and fell.[1] He suffered a concussion.

On May 7, 2014, Long filed a complaint against Homes. A jury trial commenced on September 28, 2015 and concluded on September 30, 2015. The jury returned a verdict for Homes. This appeal ensued.

---

[1] Long did not have a specific memory of the event. Alice testified that she "suddenly" saw someone she thought was running, and Homes applied the brakes before Alice could say anything. (Tr. at 99.) She opined that the vehicle did not impact Long. Homes testified that he "did not know" if his vehicle collided with Long. (Tr. at 92.) Eyewitness Nathan Helvie ("Helvie") testified that he saw the front of Homes's vehicle strike Long. He also testified that there was ice on the ground and it was "fairly slick." (Tr. at 105.)

# Discussion and Decision

[5] Due to Helvie's pre-trial statement that Homes was headed the wrong way in the horseshoe drive, Homes's direction of travel became a focus at trial. Over Long's hearsay objection, the trial court admitted into evidence an "Indiana Officer's Standard Crash Report" prepared by Officer James Gillespie ("Officer Gillespie"). (Def. Ex. A.) The narrative had been redacted, but the exhibit showed that the box indicating "Wrong Way on One Way" remained unchecked. (Def. Ex. A.) Long now argues that the admission of the redacted crash report was an abuse of discretion "that directly and harmfully contradicted the only independent eye-witness testimony." Appellant's Br. at 4.

[6] The decision to admit or exclude evidence is within the sound discretion of the trial court and will be reversed only upon a manifest abuse of discretion. *Gary Community Sch. Corp. v. Boyd*, 890 N.E.2d 794, 798 (Ind. Ct. App. 2008), *trans. denied*. An abuse of discretion occurs when the trial court's decision is contrary to the logic and effect of the facts and circumstances before it. *Id.* We will not reverse the trial court's admission of evidence absent a showing of prejudice. *Id.*

[7] Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is inadmissible unless an evidentiary exception applies. *See* Evid. R. 802.

[8] Homes concedes that the crash report was hearsay and that he did not support its admission at trial by identifying an appropriate hearsay exception. Pursuant

to Evidence Rule 803(8)(B), a police investigative report is generally not excepted from the hearsay rule. *See e.g., Averitt Exp., Inc. v. State ex rel. Ind. Dep't of Transp.*, 18 N.E.3d 608, 612 (Ind. Ct. App. 2014) (observing that the summary judgment court should have struck a crash report and also did not abuse its discretion in striking a paragraph of an investigating officer's affidavit where the paragraph was based, at least in part, on hearsay).[2]

[9] However, Homes claims that the admission of the crash report was harmless error in light of Officer Gillespie's deposition testimony to the effect that he had not checked the "wrong way" box, trial testimony that Homes's vehicle had not been moved prior to Officer Gillespie's opportunity for personal observation, and Helvie's in-court testimony contradicting his pre-trial statement. Indiana Trial Rule 61 provides that no error in the admission or exclusion of evidence is ground for setting aside a verdict, unless refusal to take such action appears inconsistent with substantial justice. "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." T.R. 61. We thus review the record to determine if the admission of the crash report was prejudicial and affected Long's substantial rights.

---

[2] Here, the officer did not "evaluate the evidence and express an opinion on the cause," as happened in *Averitt*, where the officer opined that the semi-truck driver "was not paying attention to the road." 18 N.E.3d at 612. Rather, Officer Gillespie testified that he did not check the box for a contributing factor.

[10]     Because Officer Gillespie was unavailable at trial, his pre-trial deposition was admitted as substantive evidence. He testified that he would have noted the approximate position of the vehicle at the time he arrived at the scene of the accident. According to Officer Gillespie, he "would have done interviews with the people on [the] scene," and he had no specific recollection of being given any information that the vehicle had been moved. (Depo. Pg. 21.) He acknowledged that his routine practice in making a crash report was to check any box relating to what he considered to be a contributing factor, and he testified that he did not check the box for "Wrong Way on One Way" on the crash report at issue. Thus, the redacted crash report – showing the omission of a checked box – was cumulative of Officer Gillespie's testimony that he did not check the box.

[11]     Homes testified that he had been near the exit of the horseshoe drive when the accident occurred, and he had not moved his vehicle before the officer arrived. Examining Defendant's Exhibit D, an aerial view of the horseshoe drive, Homes testified:

> You enter here and you pick up in front of the hospital. And this is why it's really impossible to go the wrong way around the circle, because you pull in purposely so that the passenger side of the vehicle faces the hospital, so as the patient comes out, they're able to place the patient in the car on the passenger side. It's just impossible that one would be allowed to go around the circle in the opposite direction causing the driver's side to face the hospital. I mean, it just – it defies common sense.

(Tr. at 93-94.)

[12] As for Long's contention that the admission of the crash report is particularly prejudicial because it contradicted Helvie's "independent" eyewitness testimony, this does not take into account the evolution of Helvie's trial testimony. During his direct testimony, Helvie acknowledged that he had told Homes's accident investigator that the vehicle had been headed "from west to east," which he described as "the wrong way." (Tr. at 107.) He stated that Homes had not moved his vehicle after the accident, other than "a small back up like, you know, he knew he hit somebody." (Tr. at 107.) On cross-examination, Helvie stated that Homes's vehicle had been "coming from the east to the west." (Tr. at 110.) He then cast doubt upon his pre-trial statement as to direction:

> Helvie: I might have, you know, had a [sic] east or west, you know, backwards trying to recollect it. But I do remember him, you know. Once I sit – and I do know the car was going from an eastern to a western direction.
>
> Counsel: And if you're going around the horseshoe and heading back to the west, then you'd actually be obeying the direction of traffic that's required on that horseshoe, correct?
>
> Helvie: See, that's what I'm not sure because the ice that was down there – and I don't remember seeing signs. I don't know if it's painted on the concrete or not. But I don't remember it being – it's, you know, for as long as it's been, you know, a little over a year, I don't remember seeing any upright signs. Now, there might have been signs on the concrete that you couldn't see 'cause of the ice and snow.

(Tr. at 112-13.)

Finally, in rebuttal argument, Long's counsel urged the jury to re-direct their focus:

> It doesn't matter if Mr. Homes was driving the wrong way or not, okay? They've denied all along there was any collision. Well, there was a collision and Nathan Helvie, who has no stake in this, told you there was. That's the liability issue here, ladies and gentlemen. That's the whole thing. That's the issue of liability.

(Tr. at 380.)

In light of the cumulative nature of the redacted crash report, the testimony that Homes was traveling in the proper direction, and counsel's arguable abandonment of the issue of directionality, we cannot say that Long suffered prejudice to his substantial rights. The admission of the crash report was harmless error.

Affirmed.

Bradford, J., and Altice, J., concur.