


FILED
Aug 08 2025, 8:30 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

The City of South Bend, Indiana,

*Appellant-Defendant*

v.

Victor C. Cao, Fun F/X II, Inc., Cao Enterprise, LLC, and Cao Enterprises II, LLC,

*Appellees-Plaintiffs*

---

August 8, 2025

Court of Appeals Case No.
23A-PL-2819

Appeal from the St. Joseph Superior Court

The Honorable Mark P. Telloyan, Judge

Trial Court Cause No.
71D07-2008-PL-262

---

**Opinion by Judge May**
Judge DeBoer concurs.
Judge Vaidik concurs in part and dissents in part.

**May, Judge.**

Victor C. Cao and three of his companies (Fun F/X II, Inc.; Cao Enterprise, LLC; and Cao Enterprises II, LLC) (collectively, "the Cao Parties") sued the City of South Bend for breach of contract, claiming the City had agreed to provide water for a warehouse's fire-sprinkler system but failed to do so and, as a result, the warehouse and its contents were destroyed in a fire. The trial court denied the City's motion for summary judgment, and the City now brings this interlocutory appeal. The City raises two issues, which we restate as:

> 1. Whether the Cao Parties' designated facts create a genuine issue of material fact about whether the City breached a contract with the Cao Parties for fire-protection water; and

> 2. Whether the City has immunity from Cao's contract action based on either sovereign immunity or the City's Municipal Utilities Rules and Regulations (hereinafter "Regulations").[1]

The Cao parties cross-appeal and argue that we should dismiss the City's appeal because it is not properly before us. We hold the City's appeal is properly before us, we affirm the trial court's denial of the City's motion for summary judgment because genuine issues of material fact exist that must be resolved by a factfinder and because the City does not have immunity under the facts most favorable to the Cao Parties, and we remand for further proceedings.

---

[1] (*See* Appellant's App. Vol. III at 2-42.)

## Facts and Procedural History

Prior to 1999, a single company owned the land and warehouses located on adjacent properties at 1000 West Sample Street and 1008 West Sample Street in South Bend. To provide fire-protection water to the warehouses on both properties, a single private underground water line (hereinafter "private fire line")[2] was connected to a public water main located south of the properties along Kerr Street. From that connection point, the private fire line ran north between the buildings at 1000 and 1008 West Sample, on the 1008 West Sample side of the property line. Then, two additional water lines ("the 1000 West fire lines") connected the private fire line to the fire-suppression system in the warehouse at 1000 West Sample Street. Although the two properties shared the private fire line for fire-protection water, each property had its own domestic water line to deliver water to sinks and toilets. The layout looked thus:

---

[2] According to the Regulations, a fire line "supplies water primarily for fire protection" while a domestic line "supplies household and drinking water." (Appellant's App. Vol. III at 9.) The parties and trial court referred to the specific fire line at issue in this case as a "private" line, and we keep that additional language for clarity.



(Appellant's App. Vol. II at 132.)

[3] In 1999, Cao bought the land and warehouse at 1000 West Sample Street in South Bend. Between 1999 and 2009, the Cao Parties paid the City for both fire-protection water and domestic water and had access to both types of water through the private fire line and a private domestic line, respectively. In 2009, someone stole the copper plumbing from the sinks and toilets in Cao's warehouse, so Cao decided to discontinue domestic water service. When the City stopped billing Cao for domestic water, it also stopped billing Cao for fire-protection water. Nevertheless, Cao's access to fire-protection water continued via the private fire line, and the City's fire inspector, Robert Krizmanich, continued to verify that Cao's warehouse had the required functioning fire-suppression system.

[4] In April 2017, as the buildings at 1008 West Sample Street were being demolished, the fire-suppression system in 1008 West Sample began to leak water. To stop the leak at 1008 West Sample Street, the City cut and capped the private fire line near where it connected to the water main at Kerr Street. As a result of the cut and cap, the Cao Parties lost access to fire-protection water in their warehouse at 1000 West Sample Street, but the City did not notify the Cao Parties that the private fire line had been cut and capped.

[5] In September 2017, Legacy Fire Protection Services, a fire-inspection company hired by the Cao Parties, went to Cao's warehouse at 1000 West Sample Street to perform the annual inspection. The Legacy inspector told Cao that the sprinkler system did not have water. Cao called South Bend Water Works and was told that the City "had no record of it being shut off." (Appellant's App. Vol. IV at 91.)

[6] In November 2017, Cao spoke to Krizmanich, who told Cao his water issue might have something to do with the fire-protection water being shut off at 1008 West Sample Street, but he did not mention a cut and cap of the private fire line. Krizmanich told Cao to contact Water Works about getting the fire-protection water restored. Cao contacted Water Works and told a representative what Krizmanich had told him. The representative said Water Works did not have any information of water services being shut off but "they would look into it and get it resolved." (Appellant's App. Vol. IV at 67.)

[7] In September 2018, Legacy Fire Protection Services returned to the warehouse for another annual inspection. After the inspection, Legacy did not report any problem with the water supply. Cao believed the fire-protection water issue had been resolved.

[8] In 2019, Cao restored the domestic plumbing in the warehouse bathroom. On July 2, 2019, Cao went to the Water Works office and submitted two applications to restore water service at the warehouse, one on behalf of Fun F/X as the warehouse tenant and the second on behalf of Cao Enterprises II, LLC, as the owner. The applications did not distinguish between domestic water and fire-protection water. The City accepted the applications and a $136 deposit but did not tell Cao about the cut and cap of the private fire line.

[9] On July 26, 2019, a fire destroyed the warehouse and its contents. The sprinkler heads for the fire-protection system activated, but no water was released from the sprinklers. Cao then went to the City to look at the drawings of the warehouse's water connections, and he learned the private fire line had been cut and capped. (Appellant's App. Vol. IV at 79.) In August 2019, Water Works sent two bills to the Cao Parties that included charges for both domestic water and fire-protection water.

The Cao Parties sued the City for negligence, negligent misrepresentation, and breach of contract.[3]  As relevant to the contract claim at issue herein, the complaint alleged:

> 12. Subsequent to the devastating fire, Mr. Cao learned that the City had disconnected and failed to restore water service to the Property's fire suppression system.
>
> 13. Mr. Cao had no reason to believe that the City had disconnected and failed to restore water service to the Property's fire suppression system.  In the months immediately before the fire, the Property's sinks and toilets had working water service….
>
> * * * * *
>
> 23. The City and Fun F/X entered a contractual relationship as buyer and seller whereby Fun F/X agreed to purchase water service for the Property's fire suppression system in exchange for payment of monthly service charges.
>
> 24. The City breached its contract with Fun F/X by failing to deliver the fire suppression water supply paid for monthly by Fun F/X.
>
> 25. As a result of the Defendants' breach of contract and negligence, Plaintiffs have suffered damages, including, without

---

[3] The Cao Parties also sued Legacy Fire Protection Services, LLC, for negligence and breach of contract. The trial court granted summary judgment to Legacy on those claims, but another panel of our court reversed and remanded for further proceedings. *Cao v. Legacy Fire Prot. Servs.*, 251 N.E.3d 576 (Ind. Ct. App. 2024), *trans. denied*.

limitation, incidental and consequential damages proximately
caused by the acts and omissions of Defendants described above.

(Appellant's App. Vol. II at 63-64.)

[11]  The City moved to dismiss the complaint under Trial Rule 12(B)(6) "on the
grounds of statutory and common law immunity." (*Id.* at 66.) The trial court
dismissed the Cao Parties' negligence and negligent-misrepresentation claims,
but it did not dismiss the Cao Parties' breach-of-contract claim. The City then
moved for summary judgment on the breach-of-contract claim.

[12]  The trial court denied the City's summary judgment motion in a thirty-seven-
page order that determined there were genuine issues of material fact about
whether a contract for fire-protection water existed between the Cao Parties and
the City:

> In this case, it is undisputed that Victor Cao submitted written
> applications on July 2, 2019. It is also undisputed that he paid a
> deposit in conjunction with submitting these applications to
> South Bend Water Works. Said deposit and applications were
> accepted by South Bend Water Works. And after these written
> applications were submitted, Cao received bills in the mail from
> South Bend Water Works for both domestic and fire protection
> water charges. Ultimately, the City has failed to show a contract
> could not have possibly existed for water for the warehouse's fire
> suppression system based on the written applications and bills,
> which must be viewed in the nonmoving party's favor.

(*Id.* at 31.) The trial court also found genuine issues of material fact existed
about whether the City breached the contract – "a jury could reasonably find

that the City could have violated its own . . . Regulations by cutting and capping the private [fire] line going to the warehouse without notice to Cao even after they accepted his deposit in July of 2019." (*Id*. at 37.) As for damages, the trial court determined the damages element of the Cao Parties' contract action could not be eliminated by either common-law sovereign immunity for municipal water companies or by the limitation in the City's Regulations because neither was applicable when the facts were viewed in the light most favorable to the Cao Parties.

Thereafter, the City filed a motion to reconsider, which the trial court denied "for all the reasons set forth in its Order of April 28, 2023." (*Id*. at 60.) The City then sought permission to bring an interlocutory appeal, which the trial court granted, and the City asked us to accept jurisdiction, which we did.[4]

# Discussion and Decision

## 1. Cross-appeal argument regarding jurisdiction

The Cao Parties argue on cross-appeal that we should dismiss the City's appeal because we did not properly acquire jurisdiction over the trial court's interlocutory order. Generally, the authority of Indiana's appellate courts is "'limited to appeals from final judgments.'" *NCAA v. Finnerty*, 191 N.E.3d 211, 217 (Ind. 2022) (hereinafter "*Finnerty*") (quoting *Ball State Univ. v. Irons*, 27

---

[4] We held Oral Argument on this case at Morris Inn on the campus of the University of Notre Dame at a meeting of the Defense Trial Counsel of Indiana on November 22, 2024. We thank everyone involved for making the event the success that it was.

N.E.3d 717, 720 (Ind. 2015)). However, Indiana Appellate Rule 9(A)(2) authorizes appeals of some interlocutory orders under Indiana Appellate Rule 14. Appellate Rule 14(A) permits appeals of some interlocutory orders "as a matter of right[,]" while Appellate Rule 14(B) permits an appeal "from other interlocutory orders if the trial court certified its order and the Court of Appeals accepts jurisdiction over the appeal."

[15] The City's appeal does not fit into any of the categories in Appellate Rule 14(A),[5] and thus the City's appeal had to be both certified by the trial court and accepted by this court under Appellate Rule 14(B). To bring an appeal under Appellate Rule 14(B), "[a] motion requesting certification of an interlocutory order must be filed in the trial court within thirty (30) days after the date the interlocutory order is noted in the Chronological Case Summary unless the trial court, for good cause, permits a belated motion." App. R. 14(B)(1)(a).

[16] To address the Cao Parties' argument, we need more details of the procedural timeline than we provided above. On April 28, 2023, the trial court denied the City's motion for summary judgment. On May 30, 2023, the City filed both a motion to reconsider the denial of summary judgment and motion to certify the denial of summary judgment for interlocutory appeal. The trial court held a hearing on those motions on June 26, 2023. Then, four months later, on

---

[5] Those categories include such orders as those for payment of money, execution of documents, assignment of securities, or sale or possession of real property, or regarding preliminary injunctions, receivers, writs of habeas corpus, or transfer of a case. App. R. 14(A).

October 26, 2023, the trial court entered an "order denying the motion to reconsider and certifying issues for interlocutory appeal[.]" (Appellant's App. Vol. 2 at 59-60) (full capitalization removed). On October 30, 2023, the City filed a motion asking the trial court to certify for interlocutory appeal the trial court's October 26th denial of the City's motion to reconsider. The trial court granted that motion the same day, and the City then petitioned our Court to accept the interlocutory appeal, which the motions panel of our Court granted.

[17] The Cao Parties note that we, as the writing panel deciding the merits of the appeal, have the authority to overturn our motions panel's decision to accept the City's interlocutory appeal. *See Means v. State*, 201 N.E.3d 1158, 1163-64 (Ind. 2023) (discussing distinction between "motions panel" and "writing panel"). We agree with the Cao Parties that we have the *authority* to do so, *see id.* at 1164-65 (holding Court of Appeals writing panel has authority to reconsider the decisions of its own motions panel), but we nevertheless note the practice of reversing the decision to accept a discretionary interlocutory appeal "is appropriately disfavored." *Id*. at 1165.

[18] The Cao Parties argue we should dismiss the City's appeal pursuant to *Wise v. State*, 997 N.E.2d 411 (Ind. Ct. App. 2013). There, Wise brought an interlocutory appeal of the denial of his pretrial motion in limine. The trial court denied that motion on September 26. On October 22, Wise filed a motion to reconsider the September 26th order and a motion asking the court to certify its September 26th order for interlocutory appeal. The trial court denied the motion to reconsider on November 14 but then, on December 4, granted

Wise's motion to certify the September 26th order for interlocutory appeal. Our motions panel accepted interlocutory jurisdiction over Wise's appeal, but then the writing panel sua sponte dismissed Wise's appeal for lack of jurisdiction because Wise's October 22nd motion asking the trial court to certify its September 26th order for interlocutory appeal had been deemed denied by Appellate Rule 14(B)(1)(e)[6] on November 22, 2012, and "the trial court could not resuscitate Wise's motion by belatedly granting it [on December 4] after it had been deemed denied." *Id*. at 413.

[19] According to the Cao Parties, the facts here are "effectively the same." (Br. of Appellees at 20.) That is so, they say, because the City's May 30th motion to certify the order denying summary judgment for interlocutory appeal had been deemed denied on July 26, which was thirty days after the trial court held the June 26th hearing on the motion, and then, on October 26, "the trial court revived the three month old deemed denied Certification Motion which *Wise* makes clear it cannot do." (*Id*.) (emphasis in original).

[20] However, the Cao Parties overlook the fact that the City filed a renewed motion to certify for interlocutory appeal on October 30, which the trial court granted

---

[6] Indiana Appellate Rule 14(B)(1)(e) provides:

> In the event the trial court fails for thirty (30) days to set the motion for hearing or fails to rule on the motion within thirty (30) days after it was heard or thirty (30) days after it was filed, if no hearing is set, the motion requesting certification of an interlocutory order shall be deemed denied.

the same day and which distinguishes this case from *Wise*.[7]  In *Finnerty*, our Indiana Supreme Court held that even orders on "a repetitive motion or a motion to reconsider" fall within the "broad ambit" of Appellate Rule 14(B)'s authorization to appeal "other interlocutory orders[.]" 191 N.E.3d at 217-18. We attain jurisdiction so long as a "party clears two discretionary judicial hurdles" -- certification by the trial court and acceptance by this court. *Id*. at 217.  The moving party must move for certification by the trial court within thirty days of the trial court's entry of an order on the Chronological Case Summary, App. R. 14(B)(1)(a), and then petition this court for acceptance within thirty days of the trial court's certification.  App. R. 14(B)(2)(a).

[21]  On October 26, the trial court entered an order on its docket,[8] and on October 30, the City asked the trial court to certify that order for interlocutory appeal. The trial court granted that motion on the same day.  The City then asked this court to accept its interlocutory appeal on November 27, 2023, and we granted the City's motion.  As such, the City cleared both discretionary hurdles to our having jurisdiction, and we turn to the merits of the City's appeal.

---

[7] To be analogous to *Wise*, the City would have had to ask us to accept an interlocutory appeal from the trial court's October 26 order certifying the case for interlocutory appeal, but the City did not do that.  Instead, the City filed a new motion to certify on October 30.

[8] We acknowledge the trial court's entry of this order was untimely.  To the extent that delay might impact the propriety of our court accepting interlocutory jurisdiction, we decline to reverse our motions panel's decision because reversal at this juncture "is appropriately disfavored." *Means*, 201 N.E.3d at 1165.

## 2. Summary judgment

The City appeals the trial court's denial of its motion for summary judgment. "Summary judgment decides a case, or issues in a case, without a trial." *Auto. Fin. Corp. v. Liu*, 250 N.E.3d 406, 411 (Ind. 2025). Its purpose is "to withdraw issues from the jury only when there are no factual issues for the jury to decide." *Cave Quarries, Inc. v. Warex LLC*, 240 N.E.3d 681, 685 (Ind. 2024). Accordingly, grant of summary judgment is appropriate only when "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). As a court determines whether genuine issues of material fact exist, it must "view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences for the nonmovant." *Cave Quarries*, 240 N.E.3d at 685. "[J]udges may not weigh the evidence or judge witness credibility." *Id.*

On appeal, we review a grant or denial of summary judgment "under a de novo standard." *Gierek v. Anon. 1*, 250 N.E.3d 378, 384 (Ind. 2025). As such, we apply the same standard from Trial Rule 56(C) that was applied by the trial court. Accordingly, we, like the trial court, must "draw[] all reasonable inferences from the evidence in the non-movant's favor." *Ind. Dept. of Ins. v. Doe*, 247 N.E.3d 1204, 1210 (Ind. 2024). The non-movant herein is the Cao Parties, and therefore as we conduct our review of the summary judgment motion at issue, we construe all facts and inferences in the Cao Parties' favor.

The trial court denied summary judgment on the Cao Parties' breach-of-contract claim. We review questions regarding the proper interpretation of a contract de novo. *Land v. IU Credit Union*, 218 N.E.3d 1282, 1286 (Ind. 2023). A breach-of-contract action requires proof of three elements: (1) the existence of a contract, (2) breach thereof by the defendant, and (3) damages resulting from the breach. *Berg v. Berg*, 170 N.E.3d 224, 231 (Ind. 2021). Thus, to receive summary judgment, the City was required to show that the facts and reasonable inferences most favorable to the Cao Parties demonstrate there were no genuine issues of material fact and the City was entitled to judgment as a matter of law regarding one of those three elements. We address each in turn.

## 2.1. Existence of Contract

The City does not provide any argument in its appellate brief to challenge the trial court's determination that genuine issues of material fact preclude summary judgment on the issue of whether a contract for fire protection water was formed between the City and the Cao Parties. Because the details of the allegations about the contract are relevant to the issues of the City's breach and the City's immunity from resultant damages, we lay out the evidence that creates a genuine issue of material fact about the existence of a contract between the Cao Parties and the City.

In the Cao Parties' response in opposition to summary judgment, they asserted:

> 39.  After getting plumbing to the bathroom restored, on or around July 2, 2019, Mr. Cao submitted two applications for restoring water service to the warehouse: one application for Fun

F/X as the tenant and one application for Cao Enterprises II LLC as the owner of the warehouse. (Cao Dep. 85.6-86:16 and Cao Dep. Ex. 8).

* * * * *

41. Neither application for service signed by Mr. Cao differentiated between domestic water supply service and fire protection water service. (Cao Dep. Ex. 8).

42. Mr. Cao paid a deposit to get the water service restored, and the water company came to the warehouse to install a new water meter. (Cao Dep., 87:7-18).

43. On Mr. Cao's August 2, 2019 water bill, the city charged him $20.58 for fire protection. (Cao Dep., 90:17-91:12 and Cao Dep. Ex. 6).

44. On Mr. Cao's August 9, 2019 water bill, the city charged him $30.87 for fire protection. (Cao Dep. Ex. 6).

45. For approximately a month before the fire, Mr. Cao had domestic water service to the warehouse and the sinks and toilets had working water service. (Cao Dep., 89:18-90:12).

(Appellant's App. Vol. IV at 8-9.)

[27] Viewing the evidence designated by the Cao Parties in the light most favorable to them, as the non-moving party – the Cao Parties' applications for water service, which did not specify between domestic water and fire-protection water, and the two bills, which charged the Cao Parties for both domestic water and fire-protection water – and drawing all reasonable inferences therefrom,

would allow a reasonable trier of fact to determine that the Cao Parties and the City contracted for both domestic water service and fire-protection water service on July 2, 2019.

## 2.2 Breach of Contract

[28] The Cao Parties assert the City breached its July 2019 contract with them for fire-protection water by not informing them that the City had cut and capped the private fire line to the warehouse's fire-suppression system. The City provides numerous arguments for why it had no obligation to tell the Cao Parties this fact, but we find none of the City's assertions dispositive in the narrow circumstances of this case.

[29] The City argues "the City manifestly was not responsible 'to connect the water service to the fire suppression system' at 1000 West Sample Street. Appellant's App. Vol. II p.36." (Br. of Appellant at 29.) We agree the Regulations did not require the City to run a new water line to connect the warehouse's fire-suppression sprinklers to the City's main line. (*See*, *e.g.*, Appellant's App. Vol. III at 11) (Section IV(C) of the Regulations states: "It is the customer's responsibility to have the service line, curb stop and all appurtenances in good working condition that the time of application."). However, that is not the breach alleged by the Cao Parties and, as such, the argument does not entitle the City to summary judgment.

[30] The City also argues "the only thing that kept the City's water from reaching the warehouse at 1000 West Sample Street was Cao's own failure to connect,

install, and maintain a proper private service line running from the warehouse to a public main line." (Br. of Appellant at 27.) While it is true that the lack of a pipe is the practical reason why water did not arrive at the sprinklers in Cao's warehouse, the evidence most favorable to the Cao Parties is that the City contracted to charge the Cao Parties for a service that the City knew it could not perform, without informing the Cao Parties that it could not perform. This is the breach at issue.

[31] The facts most favorable to the Cao Parties are these: (1) when Cao purchased the property, he paid for and had access to fire-protection water and domestic water for ten years; (2) when Cao discontinued the domestic water, he still had fire-protection water for eight years; (3) between 1999 and 2019, the City never told the Cao Parties that the private fire line bringing fire-protection water to the warehouse was "irregular"[9] and violated the Regulations; (4) the warehouse's fire-suppression system continued to pass required inspections with the City's Fire Inspector; (5) City workers cut and capped the private line in 2017 without informing Cao, who was the owner of a property that would be impacted; (6) when Cao learned he did not have water in 2017, he called the Fire Inspector, who told Cao to call Water Works because it might have something to do with destruction of the building next door; and (7) when Cao called Water Works in

---

[9] An irregular line is a line "between structures or parcels of real estate crossing any public thoroughfare or **crossing into another person's property**, or lines running parallel to the street centerline[.]" (Appellant's App. Vol. III at 32.) Herein, the private line that serviced both 1000 and 1008 West Sample Street became an "irregular line" at the time that Cao purchased the property in 1999, as the two parcels serviced by the single private line had separate owners.

2017, they told him they would look into the situation and resolve it.[10]  Thus, at the time that Cao filed the applications for service on July 2, 2019, the Cao Parties were completely unaware that there was no longer a functioning private fire line bringing fire-protection water to the warehouse.  Only the City had that knowledge, but yet the City did not reject the Cao Parties' applications for service on July 2, or on any of the twenty-four days between his application for service and the fire.  (*See* Appellant's App. Vol. III at 11) ("A service application may be rejected if, in the Utility's judgment, any of these conditions, requirements, and responsibilities [of the customer to provide the service line] are not met.").  Nor did the City contact the Cao Parties on any of those days to inform them that they needed to install a new fire line from the water main to their fire-suppression system.

[32]     The City directs us to Regulations that it says mean that it was not obliged to tell the Cao Parties that it had cut and capped the private fire line that supplied water to the fire suppression system because, at the time of the cut and cap, the Cao Parties were not paying customers.  However, the City overlooks Section VI of its Regulations, regarding "UNAUTHORIZED USE OF SERVICE" which indicates:

---

[10] The City's arguments on appeal suggest we make numerous negative inferences about Cao's character based on the fact that he was receiving fire-suppression water from the City for years without payment therefor, but our standard of review at summary judgment requires us to consider only the evidence and inferences favorable to Cao, and we therefore decline the City's invitation to make negative inferences.

> Upon determination that unauthorized usage has occurred, **the owner and/or customer shall be notified in writing** of the Utility's findings. The owner and/or customer will have 10 business days from the date of the letter to refute such findings. The Utility may hold the property owner responsible for reimbursing the Utility for any expenses incurred to stop and prevent unauthorized use or tampering.

(Appellant's App. Vol. III at 20) (full capitalization in original; bold added). Even if the Cao Parties were not paying customers in 2017, Cao remained an owner of a property that would be impacted by the City's action, and he applied to be a paying customer again in July 2019. To the extent the Regulations are conflicting, we agree with the trial court that the interpretation of the meaning and implications of the Regulations must be left to the factfinder based on external evidence. As our Indiana Supreme Court explained:

> If a contract is ambiguous solely because of the language used in the contract and not because of extrinsic facts, then its construction is purely a question of law to be determined by the trial court. Here, however, [where] the contract is ambiguous and uncertain in its terms, we believe that the meaning of the contract may well need to be determined by extrinsic evidence. As such, its construction is a matter for the factfinder. Rules of contract construction and extrinsic evidence need to be employed to determine and give effect to the parties' reasonable expectations. Under such circumstances, resolution of this issue is inappropriate for summary judgment.

*Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1133 (Ind. 1995) (internal citations and footnote omitted). Because there were genuine issues of material fact regarding

the meaning of the conflicting Regulations under the facts herein, the City was not entitled to summary judgment as to breach.

## 2.3 Damages

Regarding the element of damages, the City argues its "immunity forecloses damages." (Br. of Appellant at 35.) The City argues it has both common-law immunity and immunity pursuant to its Regulations.

The common-law immunity that the City cites is the

> long recognized common law rule that a municipality is not
> liable to an owner of property destroyed by fire even though the
> destruction may have resulted from the failure to provide suitable
> equipment or an adequate supply of water with which to fight the
> fire, i.e., insufficient water pressure, insufficient lengths of hose,
> or improperly functioning hydrants.

*Gates v. Town of Chandler, Water Dept.*, 725 N.E.2d 117, 119 (Ind. Ct. App. 2000), *trans. denied*. However, as *Gates* made clear, that immunity is "an exception to governmental **tort** liability[.]" *Id*. (emphasis added); *see also id.* at 120 ("the failure to provide adequate fire protection should be treated as an exception to governmental **tort** liability") (emphasis added). Furthermore, in *Veolia Water Indianapolis, LLC v. Nat. Trust Ins. Co.*, when our Indiana Supreme Court indicated it "believe[d] [*Gates*] reasoning to be correct[,]" the Court held: "thus, we recognize a governmental unit's failure to provide adequate fire protection as an exception to governmental **tort** liability[.]" 3 N.E.3d 1, 8 (Ind. 2014) (emphasis added). At issue at this juncture is not whether the City can be

liable under tort law, as the trial court already dismissed the Cao Parties' tort claims based on the City's immunity. (*See* Appellant's App. Vol. 2 at 101) ("Those negligence claims, including all claims arising from an asserted duty to provide 'adequate water service' and to not miscommunicate or provide false information, must be, and hereby are, dismissed pursuant to Trial Rule 12(B)(6)."). Instead, at issue is the Cao Parties' contract claim, to which neither *Gates* nor *Veolia Water* appear to apply.

[35] The City also argues it has immunity based on its Regulations, and in support it cites this text:

> **Liability of Damages** The Utility will not be responsible for any damage done or inconvenience caused by reason of pressure fluctuations, breaks, leaks or defects in, or by water escaping from, its water distribution system, which includes the mains but not the service lines, or by variations in pressure, flow or continuity of service, or by sand, dirt, particles, and other debris which may be present.
>
> Since service lines are not owned by the Utility, but by the property owner, the Utility is not responsible for damage caused by breaks, leaks or defects in the service line. The service line and all appurtenances thereto are the sole responsibility of the property owner.

(Appellant's App. Vol. III at 39-40) (emphasis in original). We, however, agree with the trial court that this immunity provision does not insulate the City from

the contract damages requested by the Cao Parties.[11]  The loss sustained by the Cao Parties was not due to "pressure fluctuations, breaks, leaks or defects in, or by water escaping from" the water mains.  The loss was due to the fact the Utility cut and capped the private fire line to Cao's building without telling him.  While the installation of a fire line complying with the City's Regulations most definitely would have been Cao's responsibility, the Cao Parties had no reason to know Cao needed to replace the private fire line, which he had used for nearly two decades without incident, because the City did not tell him.

[36]  Finally, in the alternative, the City argues that, even if the City is not immune, the most that the Cao Parties could recover in its contract action is $136 because, "after January 14, 2010, [that is] the only sum that any Cao-related entity ever paid relating to water service[.]"  (Br. of Appellant at 38.)  The City has not, however, provided a legal explanation for why Cao's breach of contract claim would be limited to the amount the Cao Parties had paid for water service.  As the City has not provided citation to authority or legal reasoning, we cannot hold the City was entitled to summary judgment on this basis.  *See, e.g.*, *Miller v. Patel*, 212 N.E.3d 639, 657 (Ind. 2023) (summary judgment argument waived for appeal when appellant failed to provide legal authority or citation to record); *see also Johnson v. Scandia Assoc., Inc.*, 717 N.E.2d 24, 31 (Ind. 1999) ("Consequential damages may be awarded on a

---

[11] Accelerate Indiana Municipalities and Indiana Municipal Lawyers Association filed an Amicus Brief in support of the City and argued the City was entitled to summary judgment based on the Regulations.  We reject the arguments from Amicus for the same reasons that we reject the City's argument.

breach of contract claim when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made.").

## Conclusion

[37] The City's appeal is properly before us, but we reject the City's arguments in support of summary judgment. Genuine issues of material fact exist about the existence of a contract between the parties and about whether the City breached that contract. The City has not demonstrated as a matter of law that it was entitled to immunity. Accordingly, we affirm the trial court's denial of summary judgment and remand for further proceedings not inconsistent with this opinion.

[38] Affirmed and remanded.

DeBoer, J., concurs.
Vaidik, J., concurs in part and dissents in part.

ATTORNEYS FOR APPELLANT

Paul Edgar Harold
Erin Linder Hanig
Tiernan B. Kane
SouthBank Legal
South Bend, Indiana

ATTORNEYS FOR APPELLEES

Michael L. Schultz
Courtney L. Darcy
Parr Richey Frandsen Patterson Kruse LLP

ATTORNEYS FOR AMICI CURIAE – ACCELERATE INDIANA MUNICIPALITIES AND INDIANA MUNICIPAL LAWYERS ASSOCIATION

Becca McCuaig
Chief Legal Counsel
Accelerate Indiana Municipalities
Indianapolis, Indiana

Maggie L. Smith
Darren A. Craig
Frost Brown Todd, LLP
Indianapolis, Indiana

**Vaidik, Judge, concurring in part and dissenting in part.**

[39] I respectfully concur in part and dissent in part. I agree with the majority that the City's appeal is properly before us. But I would go further and hold that the City is entitled to summary judgment on the Cao Parties' breach-of-contract claim.

[40] As an initial matter, a contract was clearly formed when, on July 2, 2019, the City accepted the Cao Parties' applications and deposit and resumed billing. A utility provider and a customer "occupy the contractual relationship of buyer and seller." *S. E. Ind. Nat. Gas Co. v. Ingram*, 617 N.E.2d 943, 951 (Ind. Ct. App. 1993).

[41] Where the Cao Parties' claim fails is on the element of breach. As a general matter, the contractual relationship between a utility and a customer is defined by the rules and regulations governing the utility. *See Ashland, LLC v. Virginia-American Water Co.*, 878 S.E.2d 378, 382-83 (Va. 2022); *White v. Tennessee-American Water Co.*, 603 S.W.2d 140, 142 (Tenn. 1980). The utility at issue here, South Bend Water Works, is governed by the City of South Bend Municipal Utilities Rules and Regulations, adopted by the South Bend Board of Public Works under Indiana Code section 8-1.5-3-4(a)(11). The trial court found, and the Cao Parties don't dispute, that the Rules and Regulations "apply to all water contracts entered into by South Bend Water Works[.]" Appellant's App. Vol. II p. 33. And the first provision of the Rules and Regulations, entitled "APPLICATION OF RULES," provides, in part: "The rules and regulations,

as hereinafter set forth and as amended and supplemented from time to time, shall govern all service rendered or to be rendered by the City of South Bend Municipal Utilities." Appellant's App. Vol. III p. 7. Therefore, to avoid summary judgment on their breach-of-contract claim, the Cao Parties were required to designate some evidence that the City violated one or more provisions of the Rules and Regulations. They failed to do so.

[42] The Cao Parties first contend that when they applied for water service in July 2019, the City was required to determine how the warehouse was connected to the public main. They cite the following language from the Rules and Regulations: "The Utility reserves the right to specifically determine the configuration of, number of, and location of service lines, stop valves and/or main taps to service any premise." *Id.* at 32. But the phrase "reserves the right" makes clear that the City wasn't **required** to take any of the listed actions.

[43] The Cao Parties also argue that the City was required to give them notice of the cut-and-cap, either when it was performed in April 2017 or when the Cao Parties applied for water service in July 2019. They cite the following language from the Rules and Regulations:

> Generally, irregular lines, lines between structures or parcels of real estate crossing any public thoroughfare or crossing into another person's property, or lines running parallel to the street centerline will not be allowed. If any such irregular line exists, the Utility may require its demolition at the customer's expense after giving a ninety (90) day notice.

*Id.* at 32-33. I fail to see how this provision was implicated. First, the private fire line that the City cut and capped was located on the neighboring property, not the Cao Parties' property. Second, at the time the City performed the cut-and-cap, the Cao Parties weren't customers and hadn't been for many years (since they hadn't paid anything since 2010). And third, the City performed the cut-and-cap because there was a leak on the neighboring property, not because the line was "irregular."

[44] On the issue of notice, the majority cites the following provision:

> Upon determination that unauthorized usage has occurred, the owner and/or customer shall be notified in writing of the Utility's findings. The owner and/or customer will have 10 business days from the date of the letter to refute such findings. The Utility may hold the property owner responsible for reimbursing the Utility for any expenses incurred to stop and prevent unauthorized use or tampering.

*Id.* at 20. The Cao Parties don't mention this provision in their brief, and for good reason. Again, they weren't the "owners" of the property where the cut-and-cap was performed, and they weren't "customers" at the time it was performed. And in any event, this provision addresses unauthorized usage, which was not the basis for the cut-and-cap.

[45] In the alternative to their notice argument, the Cao Parties assert that the City was responsible for restoring the connection between the warehouse and the public main. But they cite nothing in the Rules and Regulations that says so. To

the contrary, the Rules and Regulations make abundantly clear that it is the customer's responsibility to have a functioning private line. Specifically:

- "It is the customer's responsibility to have the service line, curb stop and all appurtenances in good working condition at the time of application."

- "Water and sewer service lines from the point of connection to the main, including meter pits, valves, and fittings are installed and owned by the property owner and maintained by them [with the exception of 'certain line failures' not applicable here]."

- "A customer wishing to tap into a main shall have their plumber make arrangements with the Utility for a water tap at the prevailing charge, or with the City engineering department for a sewer tap."

- "The service line and all appurtenances thereto are the sole responsibility of the property owner."

*Id.* at 11, 32, 35, 40.

[46] Because the Rules and Regulations governed the contractual relationship between the City and the Cao Parties, and because the Cao Parties failed to designate any evidence that the City violated the Rules and Regulations, I would hold that the City is entitled to summary judgment on the breach-of-contract claim. It may be that the Cao Parties have a viable **tort** claim against the City. That is, while the trial court dismissed the Cao Parties' claims for negligence and negligent misrepresentation based on common-law immunity,

an argument could be made that this immunity doesn't apply because this case involves an intentional cut-and-cap rather than just inadequate firefighting equipment or water supply. *Cf. Gates v. Town of Chandler, Water Dept.*, 725 N.E.2d 117, 119 (Ind. Ct. App. 2000), *trans. denied*. But that dismissal isn't before us in this interlocutory appeal. Only the breach-of-contract claim is before us, and for the reasons set forth above, I believe that claim must fail.